THE PEOPLE OF THE STATE OF ILLNOIS, Plaintiff-Appellee, v. JASON M. SHARP, Defendant-Appellant.

Fourth District   No. 4—02—0913

Opinion filed June 26, 2009.—Rehearing denied July 16, 2009.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Jerry A. Johnson, State's Attorney, of Clinton (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 2002, a jury convicted defendant, Jason M. Sharp, of predatory criminal sexual assault of a child, finding that he committed an act of sexual penetration upon J.E. when she was under 13 years of age (720 ILCS 5/12—14.1(a)(1) (West Supp. 2001)). The trial court later sentenced him to 20 years in prison.

Defendant appeals, arguing that (1) the trial court erred by admitting certain hearsay testimony in violation of (a) the confrontation clause of the sixth amendment (U.S. Const., amend. VI) and (b) section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 2002)); and (2) he was denied a fair trial because the prosecutor made improper statements during the State's rebuttal argument. In March 2005, this court disagreed with defendant's argu-

ments and affirmed his conviction. *People v. Sharp*, 355 Ill. App. 3d 786, 825 N.E.2d 706 (2005) (hereinafter *Sharp I*).

Defendant filed a petition for leave to appeal with the Supreme Court of Illinois. In January 2009, that court denied his petition but also entered a nonprecedential supervisory order that reads as follows:

> "In the exercise of this court's supervisory authority, the Appellate Court, Fourth District, is directed to vacate its order in [*Sharp I*, 355 Ill. App. 3d 786, 825 N.E.2d 706]. The appellate court is instructed to reconsider its decision in light of this Court's opinion in *In re Rolandis G.*, [232 Ill. 2d 13, 902 N.E.2d 600 (2008)], to determine whether a different result is warranted." *People v. Sharp*, 231 Ill. 2d 649, 899 N.E.2d 1076 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal) (*Sharp II*).

In accordance with the supreme court's directive, we vacate our earlier opinion in this case. Further, after reconsidering this case in light of *Rolandis G.*, we conclude that a different result is not warranted. Accordingly, we again disagree with defendant's arguments and affirm his conviction.

## I. BACKGROUND

In January 2002, the State charged defendant (who was then 20 years old) with predatory criminal sexual assault of a child, alleging that he committed an act of sexual penetration upon J.E. (who was 11 years old at the time of the offense and 12 years old at defendant's trial) by placing his penis in her vagina (720 ILCS 5/12—14.1(a)(1) (West Supp. 2001)). In February 2002, the State filed a motion under section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), seeking to offer at defendant's trial statements J.E. made to (1) her mother, Lydia E., (2) Mary Whitaker, the associate director of operations for the McLean County Children's Advocacy Center, and (3) her then-14-year-old friend, Tasha B.

### A. The Section 115—10 Hearing

At a March 2002 hearing on the State's section 115—10 motion, Lydia testified that on January 2, 2002, she heard from her then 15-year-old son, Jesse E., that defendant had had sexual intercourse with J.E. Later that day, Lydia had a conversation with J.E. Lydia first said, "[J.E.], I heard a rumor today," to which J.E. responded, "What, Mom?" Lydia then said "[I heard that defendant] had sex with my little girl." J.E. initially denied it, and Lydia said, "Okay, honey, you know it's one thing for two adults to be having sex, but when a 20[-] some[-]year[-]old man is having sex with an 11 year old, that's rape, and it's wrong, and you need to tell me." At that point, J.E. burst into tears and said, "Yes, I told him to stop, but he wouldn't." Lydia then

asked J.E. if defendant penetrated her, and J.E. responded that she did not know what the term "penetrated" meant. Lydia explained the term, and J.E. said that defendant had penetrated her. J.E. also told Lydia that defendant had pushed her into a building at the local fairgrounds and sexually assaulted her. Lydia then telephoned the police and reported the incident.

Whitaker testified that on January 11, 2002, she interviewed J.E. in the DeWitt County sheriff's department "victim[-]sensitive interview room." Whitaker explained that the room had a "living[-] room setting" and was set up so that the alleged child victim would not be distracted. She also explained that an Advocacy Center staff member was present during the interview, and the interview was audiotaped and later transcribed. For the purpose of the section 115—10 hearing, the trial court admitted in evidence the transcript and original audiotape of the interview. The transcript and audiotape showed that Whitaker asked J.E. open-ended questions and resorted to leading questions only to clarify details. After initial general questioning, Whitaker showed J.E. a drawing of an anatomically correct female child, and J.E. identified certain body parts, including the vagina (which J.E. referred to as "Peechacho"). J.E. then described the incident. In particular, J.E. stated that after she, Tasha, defendant (whom J.E. did not know), and Billy Joe W. (a 12- or 13-year-old boy whom J.E. knew) walked to the county fairgrounds, defendant and Billy Joe walked up the grandstand stairway. Defendant tried to convince J.E. and Tasha to walk up the stairway, but they initially refused. Following several requests by defendant, J.E. and Tasha agreed. When they reached the stairway landing, defendant pulled J.E. into a room, while Tasha and Billy Joe remained at the top of the stairway. After defendant pulled J.E. into the room, he tripped her, and she fell to the floor. Defendant then pulled down J.E.'s pants and underwear, took off his own pants and underwear, pinned J.E. down by holding her arms, and got on top of her. J.E. put her hands out in front of her and told defendant to "stop now." She told him to stop "about [5] to [10] times." Defendant did not respond to J.E.'s requests and, instead, continued to hold her down.

Whitaker asked J.E. what happened next, but J.E. did not respond. Then Whitaker showed J.E. a drawing of an anatomically correct male and asked the following questions to which J.E. gave the following answers:

"[WHITAKER]: Okay[,] use whatever words you want, and you know what you, you don't even have to use a specific word[,] you can just tell me what happened.

[J.E.]: He stuck his[,] thing[,] in ***.

[WHITAKER]: Okay you said he stuck his [']thing['] in ***?

[J.E.]: My Peechacho.

[WHITAKER]: [Your] Peechac[h]o okay. When you say his [']thing[,'] what what's his [']thing[']? You know another word for that, or would you like to use the drawing?

[J.E.]: His pee pee."

Whitaker then clarified that J.E. knew the difference between "inside" and "outside." J.E. told Whitaker that after defendant put his "pee pee" inside her, he put his pants back on and told her to pull up her pants. J.E. then found Tasha and ran down the grandstand stairway. She acknowledged telling Lydia about the incident but denied telling Tasha about it. J.E. also said that when Jesse asked her if it was true that defendant had "screwed" her, she denied it because she was "too embarrassed."

Tasha testified that after she and J.E. left the fairgrounds, J.E. told her that defendant had had sex with J.E.

After considering the testimony and counsel's arguments, the trial court took the matter under advisement. Later in March 2002, the court entered a docket entry order in which it (1) granted the State's motion seeking to offer at defendant's trial statements J.E. made to Lydia and Whitaker and (2) denied the State's motion seeking to offer the statements J.E. made to Tasha.

### B. Trial Testimony

At defendant's September 2002 trial, J.E. testified as to the circumstances surrounding how she, defendant, Tasha, and Billy Joe ended up in the grandstand of the fairgrounds on December 1, 2001. J.E. did not know the exact time they walked to the fairgrounds, but it was "turning dark." After they walked up the grandstand stairs, defendant opened a door, pushed J.E. inside a room, and shut the door. Tasha and Billy Joe remained outside the room on the stairway landing. Once inside the room, defendant tripped J.E. and pushed her to the floor.

J.E. did not respond on direct examination to five different questions about what defendant did to her when they were alone inside the room. However, she testified that she told defendant to "stop" about five times. J.E. also testified that everything she told Whitaker during the January 11, 2002, interview was true and accurate.

On cross-examination, J.E. answered all of defense counsel's questions (which were of a general sort) regarding (1) J.E.'s activities on the day in question and (2) a description of the room involved. Defense counsel elected not to ask her any questions as to what happened in the room when defendant and she were in it together.

Tasha testified that after she, J.E., Billy Joe, and defendant walked up the grandstand stairway, defendant took J.E. into the room at the top of the stairs. Tasha and Billy Joe sat on a couch on the stairway landing. Shortly thereafter, Tasha heard J.E. say, "Stop it, ouch, that hurts," and "Leave me alone." She recalled hearing J.E. say "Ouch" more than once. Around 15 to 30 minutes, when it was "about dark," J.E. and defendant came out of the room, and Tasha and J.E. walked to Tasha's residence.

Jesse testified that on December 31, 2001, he heard a rumor about defendant and J.E. That evening, he and two friends, Daniel Taylor and Steven Wisegarver, went to defendant's residence to confront him about the rumor. Defendant, who was there alone, let them in, and the four of them sat down in defendant's bedroom. Defendant said he had something to tell Jesse and then left the bedroom for a short time. When defendant returned, he told Jesse that he had "fucked [Jesse's] sister." (J.E. is Jesse's only sister.) Jesse "freaked out," pinned defendant down, and they had "some words." Jesse, Taylor, and Wisegarver then left.

Taylor testified, corroborating Jesse's account of the events that took place at defendant's residence on December 31, 2001.

Wisegarver testified that after he, Jesse, and Taylor arrived at defendant's residence on the evening of December 31, 2001, the four of them sat down in defendant's bedroom. They were "just talking" when Jesse asked defendant if the rumor about defendant and J.E. was true. Defendant replied that it was and then said, "I fucked [Jesse's] sister."

Lydia testified substantially the same as she had at the section 115—10 hearing regarding the statements J.E. made to her on January 2, 2002, as well. However, she also stated that when she initially told J.E. about the rumor that defendant had had sex with J.E., J.E., who was drinking a soft drink, nodded her head.

Whitaker testified substantially the same as she had at the section 115—10 hearing regarding the statements J.E. made to her on January 11, 2002. The court admitted in evidence the State's exhibit No. 2, which Whitaker identified as a true and accurate audiotape of the January 11, 2002, interview. The court then allowed the State to play the audiotape for the jury.

Defendant presented two alibi witnesses regarding the late afternoon of December 1, 2001, but did not testify himself. On this evidence, the jury convicted defendant. The trial court thereafter sentenced defendant to 20 years in prison.

This appeal followed.

## II. ANALYSIS

### A. J.E.'s Hearsay Statements

1. *Admissibility of the Statements Under the Confrontation Clause*
Defendant first argues that because section 115—10 of the Code created a hearsay exception that is not "firmly rooted" in the common law, the confrontation clause of the sixth amendment (U.S. Const., amend. VI) required that J.E.'s statements to Lydia and Whitaker possess " ' "particularized guarantees of trustworthiness" ' " (*People v. Williams*, 193 Ill. 2d 306, 350, 739 N.E.2d 455, 478 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 816, 111 L. Ed. 2d 638, 653, 110 S. Ct. 3139, 3147 (1990), quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980) (overruled in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004))). For the following reasons, we conclude that the confrontation clause is not an issue under the circumstances of this case.

■ In *People v. Miles*, 351 Ill. App. 3d 857, 815 N.E.2d 37 (2004), this court addressed the same argument defendant raises here. We first noted that the United States Supreme Court's decision in *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9, rendered the phrases "indicia of reliability" and "particularized guarantees of trustworthiness" irrelevant to confrontation-clause analysis. *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 43. We further noted that the *Crawford* Court held that when " 'the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.' " *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.

We adhere to our decision in *Miles* and to our analysis in *Sharp I*, which explained how, under the circumstances of this case, J.E., "appear[ed] for cross-examination at trial," so that the introduction of her hearsay statements to Lydia and Whitaker did not implicate the confrontation clause. The primary cases we discussed in so concluding were *Delaware v. Fensterer*, 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292 (1985), and *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988). We need not restate our *Sharp I* analysis because in this court's very recent decision in *People v. Bryant*, 391 Ill. App. 3d 1072, 1080-83, 1087-1100 (2009), we both readopted that analysis and updated it.

As mentioned earlier, J.E., who was then 12 years old, testified at defendant's September 2002 trial at some length regarding what she did and with whom she did it on December 1, 2001. However, at the point in her testimony when she described how defendant pulled her

into the room at the top of the grandstand stairway and pushed her down to the floor, she stopped her narrative. When the prosecutor asked her what happened next, the record shows, "No response by witness." The prosecutor tried four more times to get J.E. to relate what happened to her, but each time the record shows, "No response by witness." However, J.E. later testified on direct examination about her activities after defendant released her from the room, mentioning where she went, with whom, and how long she engaged in those activities the rest of the day.

On cross-examination, J.E. answered all of the questions put to her by defense counsel. However, defense counsel made no attempt to cross-examine J.E. regarding what his client did while in the room with her.

■ Despite J.E.'s apparent unwillingness or inability to testify on direct examination about what defendant did to her in the room, this record demonstrates that J.E. "appeared" for cross-examination at trial within the meaning of *Crawford* and the confrontation clause. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of J.E.'s prior statements to Lydia and Whitaker. (Because J.E. answered defense counsel's questions on cross-examination, we need not decide what the legal consequences would be, if any, had she instead answered some, but not all, of those questions.) In other words, the question of the admissibility of those prior statements must be measured *only* by whether they meet the requirements of section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), as discussed in the next section of this opinion. For purposes of the confrontation clause, because J.E. "appeared" for cross-examination at trial within the meaning of *Crawford*, any prior statement of J.E. being offered at trial is a nonevent.

### 2. *Admissibility of the Statements Under Section 115—10*

Defendant also argues that the trial court erred by admitting J.E.'s statements to Lydia and Whitaker pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)). Specifically, he contends that J.E.'s statements were not reliable.

Initially, we note that defendant has forfeited this issue on appeal by failing to object to J.E.'s statements to Lydia and Whitaker at the section 115—10 hearing. The record shows that defendant objected only to J.E.'s statements to Tasha. However, even assuming that defendant had not forfeited this issue, we nonetheless reject it on the merits.

■ Although the "reliability" test established in *Roberts* and *Wright* is defunct as far as the confrontation clause is concerned, it is reflected in the statutory exception to the hearsay rule set forth in section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)). *Miles*, 351 Ill. App. 3d at 865, 815 N.E.2d at 44. Section 115—10(b) of the Code provides that certain evidence shall be admitted as an exception to the hearsay rule under the following circumstances:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115—10(b) (West 2002).

■ When conducting a section 115—10 hearing, a trial court must evaluate the totality of the circumstances surrounding the making of the hearsay statements. Some factors that are important in making the reliability determination include the following: "(1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) use of terminology unexpected of a child of similar age, and (4) the lack of motive to fabricate." *People v. Cookson*, 335 Ill. App. 3d 786, 791, 780 N.E.2d 807, 811 (2002), *aff'd*, 215 Ill. 2d 194, 830 N.E.2d 484 (2005).

The State, as the proponent of the out-of-court statements sought to be admitted pursuant to section 115—10 of the Code, bears the burden of establishing that the statements were reliable and not the result of adult prompting or manipulation. *Cookson*, 335 Ill. App. 3d at 791, 780 N.E.2d at 811. A reviewing court will reverse a trial court's determination pursuant to section 115—10 of the Code only when the record demonstrates that the court abused its discretion. *People v. Bowen*, 183 Ill. 2d 103, 120, 699 N.E.2d 577, 586 (1998). "An abuse of discretion occurs when the [court's] ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *People v. Robertson*, 312 Ill. App. 3d 467, 469, 727 N.E.2d 404, 406 (2000).

■ In this case, we recognize that (1) a 33-day delay occurred between the December 1, 2001, incident and J.E.'s statement to Lydia, and (2) J.E. initially denied that defendant sexually assaulted her when Lydia asked her. However, a delay in reporting an assault or initial denials of assault will not automatically render a victim's statements inadmissible under section 115—10 of the Code. *People v. Zwart*, 151 Ill. 2d 37, 46, 600 N.E.2d 1169, 1173 (1992). Thus, as defendant

concedes, the timing of J.E.'s statement, standing alone, does not make the statement unreliable. After her initial denial, J.E. began crying and told Lydia that defendant had sexually assaulted her despite her pleas that he stop. Further, Lydia did not coach J.E. as to what she should say. Contrary to defendant's claim, the fact that Lydia had to explain the term "penetrated" to J.E. does not render the statement unreliable. Defendant seems to suggest that if J.E. were a victim of sexual assault, she should be better versed in sexual terminology. However, this was not a case in which a child victim had been "groomed" by a sexual predator and assaulted or abused over a period of time. Instead, J.E. was sexually assaulted on one occasion, and the fact that she did not know the term "penetrated" suggests (if anything) that she was not coached as to what to say.

In addition, the version of events that J.E. shared with Lydia was substantially consistent with the account of the assault she gave to Whitaker. As to Whitaker's January 11, 2002, interview of J.E., we note that Whitaker audiotaped the interview. See *Miles*, 351 Ill. App. 3d at 866, 815 N.E.2d at 45 (in which this court recommended that interviews of alleged child victims be recorded); *People v. Simpkins*, 297 Ill. App. 3d 668, 678, 697 N.E.2d 302, 308 (1998) (in which we put the State "on notice of the risk it takes by not recording interviews"). Whitaker did not coach J.E. on what to say, and she asked leading questions only to clarify details. Further, nothing in the record indicates that J.E. had any motive to lie about the assault by defendant.

Reviewing the record under the appropriate standard of review, we conclude that the trial court did not abuse its discretion by admitting J.E.'s statements to Lydia and Whitaker regarding the sexual assault pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)).

## B. The Prosecutor's Rebuttal Argument

■ Last, defendant argues that he was denied a fair trial because the prosecutor made improper statements during the State's rebuttal argument. Specifically, he complains that the prosecutor (1) improperly misrepresented that J.E.'s statements to Whitaker were not hearsay, and (2) compounded the misrepresentation by commenting that defense counsel's closing argument was a "smokescreen" and defense counsel was "mudslinging." In response to defense counsel's comment during closing argument that the State's case rested "on hearsay evidence and hearsay evidence alone," the prosecutor made the following remarks:

"Defendant wants to characterize this [case] as nothing but a hearsay case. That's not true at all. Again, that's twisting the facts. [J.E.'s] testimony in her interview where she tells what happened to her, that \*\*\* [she was] pinned to the floor and sexually penetrated[,] is not hearsay. That's not hearsay at all, ladies and gentlemen. This case does not revolve around hearsay. [J.E.] just told you what happened to her. She was there. That's not hearsay at all. A [*sic*] whole case does not revolve [*sic*] hearsay. Don't fall for the smokescreen. [Tasha] stated that she was there; she walked out to the fairgrounds, too, and she knows who went into that little room. \*\*\* I don't think there is any reasonable doubt in this particular case, but what [defendant] is doing is simply mud-slinging, trying to muddy up the waters, trying to confuse the jurors, throw a bucket of mud on the wall and hope some of it sticks somewhere. [The police officer] wasn't at fault. This was 32 days later when he found out about it. This wasn't his fault. It's not [Jesse's] fault. It is not [Wisegarver's] fault. It is not [Taylor's] fault. It is not [Tasha's] fault and it's not [Lydia's] fault. It's not [J.E.'s] fault. The person who is at fault, ladies and gentlemen, is [defendant]. Don't be deceived by the smokescreen."

Defendant concedes that by failing to raise a timely objection at trial, he has forfeited this issue on appeal. Nonetheless, he urges us to review it under the plain-error rule.

Our supreme court has addressed the issue of plain error as follows:

" ' "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " [Citation.] "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' " *People v. Crespo*, 203 Ill. 2d 335, 348, 788 N.E.2d 1117, 1124 (2001) (supplemental opinion upon denial of rehearing), quoting *United States v. Cotton*, 535 U.S. 625, 631-32, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1785 (2002), quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 137 L. Ed. 2d 718, 727, 117 S. Ct. 1544, 1549 (1997).

See *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 909-10 (1995) ("Plain error marked by 'fundamental [un]fairness' occurs only in situations which 'reveal breakdowns in the adversary system,' as distinguished from 'typical trial mistakes.' [Citation.]").

This court will take our supreme court at its word and find plain error only in exceptional circumstances in which " ' "the error seriously affect[s] the fairness, integrity, or public reputation of judicial

proceedings." ' " *Crespo*, 203 Ill. 2d at 348, 788 N.E.2d at 1124 (supplemental opinion upon denial of rehearing), quoting *Cotton*, 535 U.S. at 631-32, 152 L. Ed. 2d at 868, 122 S. Ct. at 1785, quoting *Johnson*, 520 U.S. at 467, 137 L. Ed. 2d at 727, 117 S. Ct. at 1549. See also *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659 (2008), where the supreme court quoted *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007), as follows:

> " 'We now reiterate that the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' "

Even accepting defendant's contention that the complained-of remarks were improper, we conclude that—when viewed in the context of the parties' closing arguments as a whole—they did not result in substantial prejudice to defendant or compromise the fairness or integrity of the trial process. In that regard, we note that (1) the trial court instructed the jury that closing arguments were not evidence and arguments not based on the evidence were to be disregarded, and (2) the prosecutor's allegedly improper comments were not overly extensive. Accordingly, we will not address defendant's argument under the plain-error doctrine. See *People v. Brooks*, 345 Ill. App. 3d 945, 953, 803 N.E.2d 626, 632 (2004) (declining to address on the merits the defendant's claim that the prosecutor's closing argument denied him a fair trial, upon concluding that no reason existed to excuse the defendant's procedural default because the complained-of remarks did not prejudice the defendant or compromise the integrity or fairness of the trial).

### III. FURTHER ANALYSIS AFTER REMAND FROM THE SUPREME COURT

The primary issue we addressed in *Sharp I* was the admissibility of J.E.'s statements under the confrontation clause as then-recently construed by the United States Supreme Court in *Crawford*. Citing our earlier opinion in *Miles*, we noted "that the *Crawford* Court held that when ' "the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." ' " *Sharp I*, 355 Ill. App. 3d at 792, 825 N.E.2d at 710, quoting *Miles*, 354 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Thus, our focus in *Sharp I* was to determine whether

J.E. "appeared" for cross-examination at defendant's trial. We held that she did so within the meaning of *Crawford*, concluding that, "[f]or purposes of the confrontation clause, because J.E. 'appeared' for cross-examination at trial within the meaning of *Crawford*, any prior statement of J.E. being offered at trial is a nonevent." *Sharp I*, 355 Ill. App. 3d at 796, 825 N.E.2d at 713.

### A. The Decision in *Rolandis G.*

In compliance with the supreme court's directive, we now analyze its recent decision in *Rolandis G.* to determine whether a different result in this case is warranted. We begin our analysis with a discussion of the appellate court decision in *In re Rolandis G.*, 352 Ill. App. 3d 776, 817 N.E.2d 183 (2004), that the supreme court reviewed.

### 1. *The Appellate Court Decision*

The respondent in *Rolandis G.* was adjudicated delinquent after the trial court found him guilty of aggravated criminal sexual assault (720 ILCS 5/12—14(b) (West Supp. 2001)) of six-year-old Von J. Respondent initially argued to the appellate court that the trial court erred by admitting, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), Von's statements about the sexual assault to (1) his mother, (2) a police officer, and (3) a child-advocacy worker. Respondent asserted that under section 115—10, the child victim must either (1) testify at trial (see 725 ILCS 5/115—10(b)(2)(A) (West 2002)) or (2) if the child is unavailable as a witness, then there must be corroborative evidence of the act which is the subject of the statement (see 725 ILCS 5/115—10(b)(2)(B) (West 2002)). *Rolandis G.*, 352 Ill. App. 3d at 779-80, 817 N.E.2d at 186-87. The respondent asserted that although Von gave some basic background information from the witness stand, he was not "available to testify" within the meaning of section 115—10 because he did not testify about the alleged sexual assault. Accordingly, the respondent contended that the State was obligated to introduce evidence corroborating the out-of-court statements but failed to do so.

While the respondent's appeal was pending, the United States Supreme Court rendered its decision in *Crawford*. The respondent then filed a supplemental brief, arguing that under *Crawford*, testimonial out-of-court statements by an unavailable declarant may not be admitted in a criminal trial unless the declarant was subject to cross-examination when he gave the statements. The respondent also argued that section 115—10 was unconstitutional to the extent that it allowed such statements to be admitted. *Rolandis G.*, 352 Ill. App. 3d at 779, 817 N.E.2d at 186-87.

The appellate court agreed with the respondent's arguments that Von's statements to the officer and the child-advocacy worker were testimonial and, therefore, improperly admitted under *Crawford*. *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188. The court added that "[t]o the extent section 115—10 permits the introduction of such statements, it is unconstitutional." *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188.

Although the respondent conceded that Von's statements to his mother were not testimonial hearsay, he nonetheless argued that they should have been excluded under section 115—10 because Von was unavailable within the meaning of that statute and the State did not present corroborating evidence. The appellate court agreed but also concluded that Von's out-of-court statements to his mother were still admissible if the State introduced corroborating evidence. The court ultimately agreed with the State that it had done so. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. Accordingly, the court concluded that Von's "statements to his mother were properly admitted under section 115—10 and do not raise any confrontation[-]clause issues." *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. The appellate court nonetheless reversed respondent's adjudication because it concluded that the admission of Von's statements to the officer and the child-advocacy worker constituted reversible error. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190-91.

### 2. *The Supreme Court Decision*

The supreme court granted the State's petition for leave to appeal in *Rolandis G.*, in which the State maintained its primary concerns were for the supreme court to (1) affirm the constitutionality of section 115—10 and (2) consider the proper application of *Crawford* in situations involving young victims of sexual crimes. *Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 606. The State agreed with the appellate court that (1) Von's statement to his mother was nontestimonial and (2) his statement to the officer was testimonial. However, the State challenged the appellate court's determination that Von's statement to the child-advocacy worker was testimonial. *Rolandis G.*, 232 Ill. 2d at 29, 902 N.E.2d at 609.

The supreme court disagreed with the State regarding Von's statement to the child-advocacy worker and concluded that this statement was testimonial. *Rolandis G.*, 232 Ill. 2d at 36, 902 N.E.2d at 613. The supreme court also rejected the State's argument that respondent forfeited the right to challenge the admission of Von's testimonial hearsay statements on the ground of forfeiture by wrongdoing. *Rolandis G.*, 232 Ill. 2d at 42, 902 N.E.2d at 616-17.

The last matter the supreme court addressed in *Rolandis G.* was the State's claim that the *Crawford* violation was subject to harmless-error review. The supreme court agreed with the State that harmless-error analysis applied to a *Crawford* violation and concluded that the error was harmless beyond a reasonable doubt because the "properly admitted evidence *** overwhelmingly support[ed] [respondent's] conviction." *Rolandis G.*, 232 Ill. 2d at 43, 902 N.E.2d at 617.

The supreme court did not address the constitutionality of section 115—10 of the Code. Instead, the court noted that the State withdrew that portion of its brief because the appellate court held only that it was unconstitutional "as applied." *Rolandis G.*, 232 Ill. 2d at 46-47, 902 N.E.2d at 619.

### 3. *The Application of the Supreme Court's Decision in Rolandis G. to This Case*

Consistent with the supreme court's directive that we reconsider our decision in this case in light of its opinion in *Rolandis G.*, we have discussed the earlier decision of the appellate court in that case to ensure we understood the context in which the supreme court rendered its opinion. After reconsidering our decision in this case, we conclude that a different result is not warranted because of *Rolandis G.*

As earlier stated, the primary focus of our initial decision in this case was whether J.E. "appeared" for cross-examination at defendant's trial within the meaning of *Crawford*. We concluded in *Sharp I* that she did. *Rolandis G.* addressed several important aspects of the Supreme Court's decision in *Crawford*, including testimonial hearsay and forfeiture-by-wrongdoing. (For a comprehensive and well-reasoned analysis of what constitutes testimonial hearsay, including a recent and thoughtful discussion of *Rolandis G.*, see D. Shanes, *Confronting Testimonial Hearsay: Understanding the New Confrontation Clause*, 40 Loy. U. Chi. L.J. 879 (2009).) However, because "the State conceded that Von was not available to testify at trial" (*Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 605), the supreme court did not need to address the issue in this case—namely, when a declarant appears for cross-examination.

### 4. *Harmless Error*

In any event, we conclude that defendant's conviction should be affirmed because, considering the record before us as a whole, the alleged errors of which defendant complains would constitute nothing more than harmless error. In *People v. Stechly*, 225 Ill. 2d 246, 304, 870 N.E.2d 333, 367 (2007), the supreme court held that "*Crawford* violations are subject to harmless-error analysis." In *Rolandis G.*, the

supreme court reaffirmed that holding and stated that "the test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained." *Rolandis G.*, 232 Ill. 2d at 43, 902 N.E.2d at 617. The court in *Rolandis G.* added the following:

> "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. [Citations.] In the case at bar, we find that the properly admitted evidence overwhelmingly supports the conviction and, for that reason, the admission of Von's testimonial statements *** was harmless beyond a reasonable doubt." *Rolandis G.*, 232 Ill. 2d at 43, 902 N.E.2d at 617.

■ Judged in accordance with the foregoing standard, we conclude that the properly admitted evidence on this record overwhelmingly supports defendant's conviction and, for that reason, the admission of J.E.'s statements pursuant to section 115—10 of the Code was harmless beyond a reasonable doubt.

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.