No. 2--04--1169     Filed:  12-4-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County.December 11, 2009 |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--275 |
| JAMES E. LEARN, | ) ) | Honorable John T. Phillips, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Defendant, James E. Learn, was convicted after a bench trial of one count of aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2002)) and was sentenced to a term of probation and periodic imprisonment.  Defendant's motion for a new trial and/or to reconsider the finding of guilt was denied.  This court reversed the conviction and remanded the cause for a new trial.  See People v. Learn, 371 Ill. App. 3d 701 (2007).  Our supreme court denied the State's petition for leave to appeal but, in the exercise of its supervisory authority, vacated our order and instructed this court to reconsider the case in light of In re Rolandis G., 232 Ill. 2d 13 (2008).  See People v. Learn, 231 Ill. 2d 644 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal).  After such reconsideration, we reverse and remand for a new trial.

In February 2004, defendant was indicted on one count of aggravated criminal sexual abuse. The alleged victim in this case was defendant's four-year-old niece, K.O.  Pursuant to section 115--10

of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--10 (West 2000)), the State moved to admit at trial out-of-court statements K.O. made to her father, C.O., and two police officers. Defendant filed a motion to prevent the State from introducing any of these out-of-court statements at trial, arguing that section 115--10 of the Code was unconstitutional.

The trial court, Judge Christopher Starck presiding, held hearings to determine the admissibility of the statements made to C.O. and to Detective Ginger Stokes and Officer Ray Montemayor of the Highland Park police department. C.O. testified that he changed the diaper of his infant son, C.O., Jr., at about 10:30 p.m. on December 26, 2003. K.O. was present. She usually helped by shaking talcum powder on the infant's "parts"; C.O. would then rub the powder in. On this occasion, K.O. reached out and touched C.O., Jr.'s penis with two fingers on her right hand. C.O. demonstrated K.O.'s actions, which were described for the record as "holding on [sic] his right hand with two fingers, he's wiggling --." When C.O. told her not to do that again, K.O. said, " 'Why not? Jimmy does it.' " C.O. asked what she meant, and K.O. told him that "sometimes [Jimmy] would touch her hand *** and put it on his parts, Jimmy's parts." K.O. used the word "cocita," meaning "little thing," when talking about Jimmy's private parts. C.O. spoke to K.O. "in a tranquil way, so I could obtain more information." When C.O. asked K.O. how Jimmy did that, she told him:

> " '[O]ne time, he took my hand, and he has pants, with a hole in his pants. *** He takes my
> hand and he puts it inside the hole that he has in his pants by one of the legs.' She says, 'And
> my hand goes inside, and he makes me touch his part.' "

K.O. demonstrated how she touched Jimmy; as C.O. demonstrated that in court, it was described in the record as "rubbing his thigh with his right hand." C.O. asked K.O. when it happened, but, he testified, "she doesn't have the aspect of time, like what's a week, what's a day, a time limit." She told

him that it happened " 'the other day,' " but he did not know what day she was talking about. K.O. told him of two occasions, but he could clearly recount only one occurrence. K.O. told him:

> " 'I was in the basement from [sic] the house. And he puts me on top of the bed. And we cover ourselves with a blanket or something. He touches my hand. And he puts it underneath his pants.' "

She then touched "his part," describing it as "something soft." According to C.O., she repeated that story "two, three, four times that night." C.O. stopped asking questions after his mother entered the room and heard what was being discussed; however, his mother took up questioning K.O., and K.O. repeated her story to both her mother and grandmother that night.

K.O., and the rest of the family, called defendant "Jimmy." When C.O. asked why she did not say anything before, she responded that she was scared. Defendant lived in the same house as K.O.'s grandmother, who babysat K.O. almost every day while C.O. and his wife worked. Until December 26, 2003, K.O. never mentioned anything about defendant making her touch his private parts.

The trial court ruled:

"[S]hould the child testify, the time, content, and circumstances of this testimony is sufficient--would be sufficiently reliable to allow this testimony to go to the jury pursuant to Section 115--10, again, conditional upon the fact that the child does in fact testify in the case."

At a separate hearing, Detective Stokes testified that she interviewed K.O. at the police department on December 27, 2003. The interview was conducted in English, but Officer Montemayor was present in case a Spanish translator was needed. The interview was both videotaped and audiotaped. Stokes testified that she had been misinformed that K.O.'s grandfather,

not her uncle, was the perpetrator. She asked K.O. if her grandfather had ever touched her inappropriately or if anybody had grabbed her hand and made her touch him in his private area, and K.O. said no. K.O. told Stokes that her cousin Kevin had shown her his "pee-pee"; when asked if anyone else had shown her his pee-pee, K.O. replied no, only Kevin. Stokes showed K.O. anatomical diagrams of both male and female forms and asked K.O. if she could identify different parts of the body. When Stokes drew a line to the penis, K.O. did not say anything.

Stokes and Montemayor interviewed K.O. again on December 30, 2003. K.O.'s mother was also present in the room, seated behind K.O. This interview was conducted in Spanish, with Montemayor translating, as K.O. told them she was more comfortable speaking Spanish. No recording, either video or audio, was made of this interview. According to Stokes, K.O. stated that, "on several occasions[,] her Uncle Jimmy had taken her hand and placed it on his thingy." Once, Jimmy placed a blanket over her and placed her hand on his "thingy." K.O. related that Jimmy would wear long pants with a hole in front and that he would place her hand inside his pants. When Stokes asked how often this happened, K.O. said that "it was every time that she went over to her Uncle Jimmy's but not to baby-sit" and that it would happen "on his bed in the basement." Stokes also specifically testified that K.O. referred to Jimmy's penis as "thingy." Stokes again showed K.O. an anatomical diagram of a male and asked her to show where her hand had been placed and what it was called; K.O. pointed to the penis and said "that's the thingy." When asked why the first interview with K.O. had been videotaped, Stokes replied, "It was at the police department and our goal is not to have a five year old testify in a trial like this." The second interview was held at the Child Advocacy Center, which did not have video equipment.

Montemayor testified that he did not translate anything during the interview on December 26. He saw no indication that K.O. had any problem understanding or communicating in English. During the December 30 interview, he translated Stokes' English questions and K.O.'s Spanish responses. K.O. said that on one occasion, Jimmy grabbed her hand and made her touch his "thingy"; according to Montemayor, K.O. used the word "tosito," the Spanish word for "thingy." The trial court ruled:

"[I]f the victim does testify the court believes that the time, content and circumstances of this testimony are sufficient, show sufficient areas of reliability and if she is subject to cross examination herself the court would allow the statements to go in ***."

Judge John Phillips then presided over the case. Before trial, the court held a hearing to determine K.O.'s competency as a witness. K.O.'s examination was conducted with the aid of an interpreter. K.O. was able to testify about her age, the names of her parents and brother, and where she lived and went to school. She understood the difference between the truth and a lie and that she had to tell the truth in court. K.O. did not know when her birthday was or when Santa Claus brought presents. During the court's questioning, the following took place:

"THE COURT: *** But you will tell us what's true today? You will tell us the truth?

THE WITNESS: I don't know.

THE COURT: Okay. If I ask you to tell me what's true, will you tell the truth and not a lie?

THE WITNESS: I don't know.

THE COURT: Okay. Tell me if you don't understand me.

THE INTERPRETER: Okay.

THE COURT: Have you had a problem with any words I have said to you?

THE WITNESS: No.

* * *

THE COURT: Would you do this for me: Would you raise your hand for me[?]

THE WITNESS: (Raising left hand.)

THE COURT: The other hand. And would you repeat this, would you say, I promise I will tell the truth.

THE INTERPRETER: I promise to tell the truth."

The court then found K.O. to be competent to testify, and the trial began.

K.O. testified through a Spanish/English interpreter. K.O. said that she went to her grandmother's house after school, but she did not go there anymore. Her grandmother and Aunt Minnie lived there. When asked if she knew if Minnie was married, she answered "No." She also answered "No" when asked if anyone else lived in the house and if she had any uncles. She did not remember the incident when she helped her father change her brother's diaper. She was feeling "[a] little embarrassed" about testifying. At the State's request, the court then took a short break. After resuming, K.O. testified that, in her grandmother's house, her grandmother slept upstairs, the kitchen was downstairs, and there was a basement. She did not know who slept in the basement. The State tried to calm K.O. and reminded her that she made a promise to the judge. K.O. then testified that she had seen her Aunt Alberteeta in the basement and that Alberteeta was married to Jimmy, whom she then pointed out as defendant. She stated that Jimmy was not her uncle but that he was married to Aunt Alberteeta. She liked Alberteeta but did not like Jimmy, although she could not say why she did not like him. She went to the police station but did not answer any questions. K.O. said that she had talked to the assistant State's Attorney the day before. She stated that she was nervous and that

she wanted her mother near her. The court took another recess when K.O. put her head down and began to cry. When the trial resumed, the State asked K.O. if she was feeling better, and after she responded that she did not know, it stated that it had no more questions.

The court then ruled that the State had produced K.O. to testify, although it noted:

"[W]hen the young lady just took the stand again[,] she was still--I wouldn't say that it was sobbing, but she was--every time somebody asked her a limited question, she began to cry again and it was not a light crying by a child."

The court stated that it was aware of no law that required the State to "go through the event" with the witness and ruled as follows:

"THE COURT: Well, she is not unavailable because she is here. So the key is did she testify at the proceedings. She did testify at the proceedings. I found her to be competent. And if you wish to cross examine, then you can certainly cross examine and I'm not going to sustain any objections with respect to scope concerning the event because Mr. Newsome [the assistant State's Attorney] did in fact talk about places and people in this case, so [it] has opened the door to any of that anyway. So I am not going to overrule Judge Starck with respect to his findings because I didn't hear those particular statements. But I would find that the prong of having the child testify at the proceedings has been fulfilled. So if you wish to cross examine, you certainly can do that. So bring the child in here."

Other than establishing the fact that K.O. had a "Tio Jimmy," defense counsel asked a total of five questions about defendant. K.O. responded "I don't know" when asked if Jimmy was mean to her, if she thought that Jimmy did not like her, and if Jimmy told her to go upstairs when she went

into the basement of her grandmother's house, where Jimmy lived. K.O. answered "No" when asked if she had ever told her parents a lie about Jimmy or if she had ever told her dad anything about him.

The State then presented the testimony of C.O., Stokes, and Montemayor, who all testified similarly to the statements they had previously made to the court.

Defendant first contends that the trial court erred in admitting K.O.'s out-of-court statements as substantive evidence at trial. We agree.

Section 115--10 of the Code, which allows for certain hearsay exceptions, provides in part:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such an act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such an act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against the victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115--10 (West 2002).

Defendant argues that his right to confront witnesses against him, guaranteed by both the United States and the Illinois Constitutions, was violated by the trial court's admission, pursuant to section 115--10, of K.O.'s out-of-court statements. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8. According to defendant, the court admitted testimonial hearsay without either: (1) the declarant testifying at trial and being subject to cross-examination; or (2) the declarant being unavailable to testify and defendant having a prior opportunity to cross-examine. Cases should be decided on nonconstitutional grounds whenever possible, and constitutional issues should be decided only as a last resort. In re E.H., 224 Ill. 2d 172, 178 (2006). A trial court's rulings on evidentiary matters will not be reversed absent a clear abuse of discretion; however, evidentiary rulings involving questions of statutory interpretation or other questions of law are reviewed de novo. In re T.T., 384 Ill. App. 3d 147, 155 (2008).

Defendant first argues that K.O. did not testify at trial pursuant to section 115--10(b)(2)(A). The State did call K.O. as a witness. However, our review of K.O.'s "testimony" leads us to conclude that she did not testify pursuant to section 115--10. It took 10 pages of questioning before K.O. even admitted that a person named Jimmy existed; the only information that K.O. gave about Jimmy was that he was the husband of K.O.'s Aunt Alberteeta and that K.O. did not like Jimmy, although she did not know why. After a few more pages of questions, during which K.O. was asked about going to the police station and whether she had been asked some questions there, K.O. put down her head and

began to cry. After a short recess, the State asked whether K.O. felt better. After K.O. responded that she did not know, the State informed the court that it had no more questions.

We conclude that the trial court erred in ruling that K.O. was available and did testify, for purposes of section 115--10. A child witness is considered unavailable if the child is unwilling or unable to testify because of fear, unable to communicate in the courtroom setting, or declared incompetent because she is incapable of expressing herself so as to be understood concerning the matter. T.T., 384 Ill. App. 3d at 156. It makes no difference whether the witness becomes "unavailable" before or after she takes the witness stand. See People v. Coleman, 205 Ill. App. 3d 567, 583 (1990).

The State cites to the Fourth District Appellate Court decision in People v. Sharp, 355 Ill. App. 3d 786, 795 (2005), for the proposition "that the key question is whether the declarant was present for cross-examination and answered defense counsel's questions."[1] In Sharp, the victim testified "at some length" about "what she did and with whom she did it" on the day that she was sexually assaulted. Sharp, 391 Ill. App. 3d at 953. However, she stopped her narrative after describing how the defendant pulled her into a room and pushed her to the floor; multiple attempts to get the victim to describe what happened next were met with " 'No response by witness.' " Sharp, 391 Ill. App. 3d at 954. The victim later testified, still on direct examination, about what happened after the defendant released her from the room. The victim then answered all questions put to her on cross-examination, but defense counsel

---

[1]Like the case before us, Sharp was also vacated and remanded for reconsideration in light of Rolandis G. (see People v. Sharp, 231 Ill. 2d 649 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal)). After reconsideration, the Sharp court concluded that "a different result is not warranted" and affirmed the defendant's conviction. People v. Sharp, 391 Ill. App. 3d 947, 949 (2009).

did not ask any questions about what the defendant did with her in the room. Sharp, 391 Ill. App. 3d at 954. The appellate court concluded that, even in light of the victim's "apparent unwillingness or inability to testify on direct examination about what defendant did to her in the room," the victim " 'appeared' for cross-examination at trial." Sharp, 391 Ill. App. 3d at 954.

We cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony pursuant to section 115--10. In Crawford v. Washington, 541 U.S. 36, 60 n.9, 158 L. Ed. 2d 177, 198 n.9, 124 S. Ct. 1354, 1369 n.9 (2004), the United States Supreme Court described a declarant's appearance, for purposes of a constitutional confrontation clause analysis, as a situation where "the declarant is present in court to defend or explain" his out-of-court statement. (Emphasis added.) While our analysis is not a confrontation clause analysis, the Supreme Court's definition of appearance is equally applicable here.

Both the sixth amendment and the Illinois Constitution grant an accused the right "to be confronted with the witnesses against him." U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8. The text of the confrontation clause applies to " 'witnesses' " against the accused--those who " 'bear testimony.' " Crawford, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364, quoting 2 N. Webster, An American Dictionary of the English Language (1828). The central concern of the right to confront is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." People v. Lofton, 194 Ill. 2d 40, 56 (2000). The "confrontation," then, is a witness's bearing of testimony against the defendant; the defendant then has the right to rigorously test that testimony through cross-examination. In order to be confronted by and cross-examine a witness, a defendant must know who the witness is

and what the witness's testimony is. Section 115--10(b)(2)(A) acknowledges this; it requires that the child "testifies at the proceeding." 725 ILCS 5/115--10(b)(2)(A) (West 2002). It does not merely require that the child be "available" to testify or be sworn in and available for cross-examination. If the child is the only witness (other than hearsay reporters) who can accuse the defendant of actions constituting the charged offense, the child must testify and accuse if she is to be considered to have testified at the proceeding under section 115--10(b)(2)(A). Immaterial or general background "testimony" is not sufficient.

In the case before us, the trial court told defense counsel that it would not "sustain any objections with respect to scope concerning the event because Mr. Newsome [the assistant State's Attorney] did in fact talk about places and people in this case." However, K.O. did not testify at all about the charge in this case and barely acknowledged the people and places about which she was questioned. She did not "bear testimony" against defendant. She neither made accusations nor gave relevant and material testimony. The trial court's statement implicitly admitted that K.O.'s "testimony" was not incriminating or material; had there been any such testimony, the trial court would not have had to allow an expanded scope of cross-examination to go into areas clearly not brought up during the State's questioning.

However, even such a "generous" expansion of the scope of cross-examination is, at best, a Trojan horse. In order to get a declarant to "defend or explain" testimony not given on direct examination, a defendant would be placed in the untenable position of both trying to elicit testimony about the alleged event and attempting to challenge and refute the very testimony he was forced to elicit. The dissent notes that defendant did cross-examine K.O. and that "K.O.'s answers may not have been what counsel was seeking to elicit." Slip op. at 23. However, in the absence of accusatory

testimony, there would seem to be very few, if any, answers that defense counsel would seek to elicit. Until facts are in issue, a defendant has no reason to turn a sworn witness into a sworn hostile witness.

The dissent relies in great part on People v. Garcia-Cordova, 392 Ill. App. 3d 468 (2009), for support for its conclusion that K.O. was available and testified. However, we find that this court's analysis in Garcia-Cordova and the State's argument in this case fail to address the lack of confrontation in the examination of the victim. The dissent details all the questions that the victim in Garcia-Cordova answered or could not answer but fails to note that all but one question dealt with issues other than the actual accusation of sexual abuse. In Garcia-Cordova's recitation of the victim's testimony, the only bit of testimony related to the charges was that "she did not recall anything happening in her bedroom or on the couch." Garcia-Cordova, 392 Ill. App. 3d at 473. Other than general background information and identification of the defendant, the vast majority of the State's questions involved the victim's interview with a child protection investigator and pictures that she drew during the interview. See Garcia-Cordova, 392 Ill. App. 3d at 472-73. Defense counsel did not cross-examine the victim.

As in the case before us, there was nothing for defense counsel to cross-examine; the victim did not confront the defendant and accuse him of anything. No fact was at issue. The Garcia-Cordova court's observation that the victim's lack of recall regarding the incidents of abuse and other facts could be considered " 'friendly' cross-examination" (Garcia-Cordova, 392 Ill. App. 3d at 484) is not helpful in resolving this case. The witness's inability to answer the single question about alleged abuse--to accuse the defendant--led only to the State's ability to bring in other witnesses to testify about what the victim said to them at some other time. Again, the defendant was never given the chance to challenge an accusation against him. None was made. The victim's lack of answers inured to the benefit of the State, not to the benefit of the defendant.

The principal problem at which the confrontation clause was directed was the use of ex parte examinations as evidence against the accused in criminal cases. Crawford, 541 U.S. at 50, 158 L. Ed. 2d at 192, 124 S. Ct. at 1363. The logic behind this is simple: one cannot cross-examine an out-of-court report of what he allegedly said or did. A witness must be placed under oath, with implications (i.e., criminal contempt, perjury, or eternal damnation) for false testimony, and testify before the trier of fact about the charges, not about irrelevant or mere background information. Here, K.O.'s spoken testimony was not incriminating; thus, defendant was not confronted by his accuser nor given the right to rigorously test the accusation against him through cross-examination.

Sir Walter Raleigh, suspecting that his out-of-court accuser, Lord Cobham, would recant if forced to testify in court, proclaimed, " '[t]he proof of the Common Law is by witness and jury: let Cobham be here, let him speak it. Call my accuser before my face....' " Crawford, 541 U.S. at 44, 158 L. Ed. 2d at 188, 124 S. Ct. at 1360, quoting Raleigh's Case, 2 How. St. Tr. 1, at 15-16 (1603). Raleigh did not say, "let some person to whom Cobham told his story come before this court. Let some person other than Cobham speak. Call this third person before my face to recant his double hearsay." Mere presence and general testimony are insufficient to qualify as the appearance and testimony of a witness. We conclude that K.O. was unavailable as a witness and did not testify for purposes of section 115--10(b)(2)(A).

Whether the out-of-court statements of an unavailable witness may be admitted at trial depends, in part, on whether the statements are testimonial in nature. Testimonial statements are subject to the confrontation clause of the sixth amendment. See Davis v. Washington, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006); Rolandis G., 232 Ill. 2d at 26. The testimonial statement of a witness who does not testify at trial is never admissible unless: (1) the witness is unavailable to testify, and (2) the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 53-54, 158 L. Ed.

2d at 194, 124 S. Ct. at 1365; People v. Stechly, 225 Ill. 2d 246, 279-80 (2007). A statement is testimonial if it is made in a solemn fashion and is intended to establish a particular fact. See Rolandis G., 232 Ill. 2d at 31; Stechly, 225 Ill. 2d at 280-82. "[A]t a minimum," the term "testimonial" covers police interrogations as well as statements that are the result of other types of formal questioning where there was no opportunity for the defendant to cross-examine. See Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374; Rolandis G., 232 Ill. 2d at 25.

It is clear that K.O.'s statements to Stokes and Montemayor were testimonial. Both of their interviews of K.O. were "police interrogations," the primary purpose of which was to "establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74. Since K.O. did not testify and defendant had no prior opportunity to cross-examine her, the testimony of Stokes and Montemayor recounting K.O.'s statements was admitted in error.

Defendant also argues that K.O.'s statements to C.O. were testimonial and similarly admitted in error. When a statement is not the product of law enforcement interrogation, either by the police or by someone acting on behalf of law enforcement, the proper focus is on the intent of the declarant, and the inquiry should be whether the objective circumstances would lead a reasonable person to conclude that her statement could be used against the defendant. Rolandis G., 232 Ill. 2d at 31; Stechly, 225 Ill. 2d at 288-89. When the declarant is a child, the child's age may be an objective circumstance to be taken into account in determining whether a reasonable person in her circumstances would have understood that her statement could be available for use at a later trial. Rolandis G., 232 Ill. 2d at 31; Stechly, 225 Ill. 2d at 295-96.

We cannot conclude that K.O.'s statements to her father were testimonial. Given K.O.'s age, we cannot conclude that a reasonable four-year-old child would have understood that her statements

would be available for use at a later trial. K.O.'s initial statement was not made as an accusation against defendant. When she was told not to touch her brother's penis, she asked, " 'Why not? Jimmy does it.' " K.O. did not raise the issue on her own to complain of defendant's actions. K.O.'s question makes clear that she was not aware that such actions were inappropriate. Compare this to the victim in Rolandis G., who, after coughing, spitting, and washing out his mouth twice, "spontaneously" told his mother that the respondent had made him " 'suck his dick.' " Rolandis G., 232 Ill. 2d at 43. His statements to his mother, who then questioned him about the incident, were considered to be nontestimonial. See Rolandis G., 232 Ill. 2d at 22, 29. Similarly, while C.O, and, later, his mother, questioned K.O. about the alleged incidents, those questions were the questions of a concerned father and a concerned grandmother, asked shortly after K.O. made a stunning statement. This was not formal questioning by someone acting on behalf of law enforcement. See Stechly, 225 Ill. 2d at 301-02. The determination of whether a statement is testimonial must be made on a case-by-case basis and resolved on its own merits. Stechly, 225 Ill. 2d at 298. Under these circumstances, based on K.O.'s intent in making her statements and C.O.'s and his mother's intent in questioning K.O., we conclude that K.O.'s statements to C.O. were nontestimonial.

Where nontestimonial hearsay is at issue, states are granted flexibility in their development of hearsay law. Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374; Rolandis G., 232 Ill. 2d at 25. If a child does not testify at trial, section 115--10(b)(2)(B) still allows the introduction of the child's nontestimonial out-of-court statement if "there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115--10(b)(2)(B) (West 2002). However, it is clear that there was no corroborative evidence of any act alleged in K.O.'s statements. The only evidence presented in this case was the various recitations of K.O.'s out-of-court statements.

In Rolandis G., the victim, Von, did not testify. Von's mother, Jacqueline, testified that Von had been in the company of Rolandis on the day in question. After Von and Rolandis returned to Jacqueline's home, Rolandis waited outside while Von entered the house. Von "[u]ncharacteristically" declined to go back outside with Rolandis and went "directly" to the bathroom "and began to act strangely: coughing, spitting, and washing his mouth out with water" two times. Rolandis G., 232 Ill. 2d at 43. Von then "spontaneously" told Jacqueline that Rolandis had made him perform oral sex on Rolandis. Rolandis G., 232 Ill. 2d at 43. Our supreme court found that "Von's actions upon his return home, which Jacqueline witnessed, correlated to the type of sexual abuse Von said occurred and strongly indicated that the abuse occurred very recently, at a time when Von had been solely in respondent's company." (Emphases added.) Rolandis G., 232 Ill. 2d at 44. The court then concluded that "Jacqueline's testimony about her observations of Von's behavior, in addition to her testimony regarding Von's statement to her, overwhelmingly supports the conviction in this case." Rolandis G., 232 Ill. 2d at 44. While the court's analysis specifically applied to whether the improper admission of other testimonial statements resulted in harmless error, we note that Jacqueline was the only witness for the State whose testimony was found to be proper in the absence of Von's testimony.

Here, there is no such "correlation" or corroboration. K.O. did reach out on her own and touch her brother's penis; however, this fact adds little if any weight or credibility to her statement that defendant "would touch her hand *** and put it on his parts." K.O.'s descriptions of the alleged incidents were rather fact-specific; K.O. described defendant taking her hand and putting it "inside the hole that he has in his pants by one of the legs." The other incident involved being covered with a blanket and, again, having her hand placed underneath defendant's pants. In addition, the manners in which K.O. touched her brother's penis and allegedly touched defendant's penis were different. C.O. demonstrated both to the court; the first involved wiggling two fingers while the second involved

rubbing his thigh with his hand. Unlike Jacqueline's observations in Rolandis G., C.O.'s observations did not correlate to the type of abuse described by K.O. Furthermore, we disagree with the dissent's assertion that K.O.'s touching of her brother's penis was necessarily a demonstration of her "knowledge of sexual matters." See slip op. at 25. Nothing in the context of changing her brother's diaper necessarily leads to the conclusion that K.O. even knew of the sexual function of the penis. Therefore, because K.O. did not testify and there was no corroborative evidence presented, the trial court erred in admitting C.O.'s testimony regarding K.O.'s out-of-court statements.

Crawford violations are subject to harmless-error review. See Rolandis G., 232 Ill. 2d at 43. However, since the only evidence presented at trial was the testimony of C.O., Stokes, and Montemayor, the improper admission of this testimony cannot be held to be harmless error. Therefore, we must remand this cause for a new trial. As we have decided this issue on statutory grounds, we need not address defendant's constitutional arguments.

Defendant next contends that the trial court erred in allowing Stokes to testify regarding K.O.'s statements made at the second interview, because Stokes' testimony was actually double hearsay. According to defendant, Stokes did not speak Spanish, the language in which the second interview with K.O. was conducted. As a result, Stokes did not testify as to what K.O. said; she testified as to what Montemayor told her K.O. said. The State argues that this issue is forfeited because defendant did not raise it in his motion for a new trial. See People v. Enoch, 122 Ill. 2d 176, 186 (1988). However, in the interests of judicial economy, we will address this issue, as it will probably arise during a retrial.

"Section 115--10(a)(2) 'clearly mandates that the testifying witness hear the child's remark personally.' [Citation]." People v. Petitt, 245 Ill. App. 3d 132, 142 (1993). Stokes no more heard K.O.'s remarks personally than K.O. heard Stokes' questions personally. Only Montemayor could testify as to what K.O. said. Contrary to the State's assertion, this conclusion does not "preclude the

application of section 115--10 when the victim cannot speak English." The State must merely present the testimony of the person who actually heard the child's remarks--the translator. If, on remand, the State again seeks to introduce K.O.'s out-of-court statements, it would be "plain error" for the trial court to allow Stokes to testify as to the "hearsay on hearsay" of what K.O. said in the December 30 interview. See Petitt, 245 Ill. App. 3d at 142.

Defendant next contends that the trial court erred in finding that K.O. was a competent witness and that the time, content, and circumstances of K.O.'s statements provided sufficient safeguards of reliability (see 725 ILCS 5/115--10(b)(1) (West 2002)). Because of our disposition of defendant's other contentions, and the fact that new pretrial hearings would need to be held before trial on remand, we need not address these issues at this time.

Defendant next contends that the evidence was insufficient to support his conviction. A conviction will not be overturned on appeal unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. Petitt, 245 Ill. App. 3d at 135-36. Further, a conviction will not be overturned if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Petitt, 245 Ill. App. 3d at 136. We will consider all the evidence admitted at the trial, even evidence that was erroneously admitted. T.T., 384 Ill. App. 3d at 166.

Reviewing all the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to prove defendant's guilt. While the evidence was not overwhelming, especially regarding exactly when the offense allegedly occurred, the testimony of C.O. and Stokes was consistent as to the identification of defendant as the perpetrator and also as to at least two details, that defendant allegedly placed K.O.'s hand on his penis through the hole in his pants and that he placed her on his bed in the basement and put a cover over her. We cannot say that no rational trier of fact could

have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, while we reverse the trial court's judgment in this case, we also remand the cause for a new trial.

For these reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HUTCHINSON, J., concurs.

JUSTICE HUDSON, dissenting:

I disagree with several aspects of the majority's opinion. First, I believe that K.O. appeared at trial within the meaning of both section 115--10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--10 (West 2002)) and Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). Second, I believe that K.O.'s statement to C.O. was admissible. The majority does correctly conclude that this statement is not testimonial. I do not agree, however, that the statement lacks corroboration such that it is inadmissible pursuant to section 115--10. Accordingly, I respectfully dissent.

The majority holds that "[w]e cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony pursuant to section 115--10." Slip op. at 11. The majority goes on to cite Crawford for the proposition that the confrontation clause requires a declarant to be "present at trial to defend or explain" an out-of-court statement. Crawford, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9. Parenthetically, I do not disagree with the majority's use of Crawford's definition of "present" to analyze whether the declarant appeared for the purposes of section 115--10; indeed, the standard that has been articulated for determining whether a child has appeared under section 115--10 is similar to the standard articulated in Crawford. See People v. Bowen, 183 Ill. 2d 103, 115 (1998) (holding that, absent a

finding of unavailability, "section 115--10 makes the introduction of the statements expressly contingent upon the child's <u>production for direct and cross-examination</u> at trial" (emphasis added)).

Initially, I am not persuaded by the majority's attempt to distinguish <u>People v. Sharp</u>, 391 Ill. App. 3d 947, 953-54 (2009). In that case, the victim testified to events before and after the crime, but when the State asked her about the actual crime, the record showed only " ' no response by witness,' " which indicated that she refused to respond. <u>Sharp</u>, 391 Ill. App. 3d at 954. The victim answered all questions put to her by defense counsel during cross-examination, and defense counsel made no attempt to question the victim about the crime itself. <u>Sharp</u>, 391 Ill. App. 3d at 954. The fact that, as the majority points out, the victim testified at "some length" about events that occurred before and after the assault does not alter the fact that she did not testify about the assault itself. <u>Sharp</u>, 391 Ill. App. 3d at 953-54. Moreover, unlike the victim in <u>Sharp</u>, who refused to answer certain questions, K.O. at least responded that she did not know or could not recall certain facts.

In any event, I believe that the testimony that K.O. did give was sufficient to satisfy the requirements of the confrontation clause and section 115--10 in accordance with applicable case law. The following recent cases provide sound guidance for resolving this issue. In <u>People v. Garcia-Cordova</u>, 392 Ill. App. 3d 468, 472-73 (2009), the victim, after testifying to some preliminary matters, made an in-court identification of the defendant as her stepfather, but denied that she lived with anyone besides her mother and sister. She denied remembering going to a medical clinic and telling someone a secret. She recalled meeting two investigators and drawing pictures during the meeting, but she stated that she did not recall the purpose of the meeting. She identified one of the drawings, including stating that it depicted her and the defendant's hand, but she also stated " 'It was a long time ago' " and could not say what the defendant's hand was doing. <u>Garcia-Cordova</u>, 392 Ill. App. 3d at 472. She identified other pictures she drew, while stating that she did not recall drawing others. She also testified

that she did not know why she drew any of the drawings. She denied seeing certain anatomical charts, while acknowledging seeing others. She further denied remembering anything occurring in her bedroom or on the couch. Finally, she testified that she did not know what part of the body the bottom part of a bathing suit covered or whether there were parts of the body that should not be touched. Defense counsel declined to cross-examine. Though the victim's responses may not always have been what counsel was seeking to elicit, the victim remained responsive throughout the examination and did not "freeze up." We held that the victim had appeared within the meaning of the confrontation clause. Garcia-Cordova, 392 Ill. App. 3d at 483-84.

At the opposite end of the spectrum is In re Rolandis G., 232 Ill. 2d 13 (2008). There, the victim, after answering a few preliminary questions and identifying the respondent as someone he knew from the neighborhood, "resolutely refused to respond" to additional questions. Rolandis G., 232 Ill. 2d at 18. The court took a short recess, and the victim spoke with his mother and a child advocate. When trial resumed, the victim "could not bring himself to answer questions about the allegations." Defense counsel declined an opportunity to attempt cross-examination. In Garcia-Cordova, we noted that Rolandis G. provides no detailed discussion of the availability issue and that the case can be read as standing "for the proposition that where a child answers some preliminary questions unrelated to the allegations but refuses to answer in any form substantive questions regarding the allegations, the child is unavailable." Garcia-Cordova, 392 Ill. App. 3d at 481.

The present case lies somewhere between Rolandis G. and Garcia-Cordova. K.O. testified that she used to go to her grandmother's house after school but no longer did so. She testified that her Aunt Minnie lived there as well and that Minnie was not married. She answered "no" when asked if anyone else lived in the house. She did not recall the occasion upon which she helped her father change her brother's diaper. She stated that she did not know who slept in her grandmother's basement. However,

she then testified that she had seen her Aunt Alberteeta in the basement and that Alberteeta was married to Jimmy. She made an in-court identification of defendant as Jimmy. She stated that Jimmy was married to Alberteeta but denied that he was her uncle. She stated that she did not like Jimmy but could not say why. She acknowledged that she had visited the police station but denied answering any questions. She recalled speaking with the assistant State's Attorney the day before the trial. The court took a recess when K.O. put her head down and started crying. Following the recess, the State said it had no further questions. During cross-examination, K.O. acknowledged that she had an Uncle Jimmy, but answered "I don't know" when asked if Jimmy was mean, whether he disliked her, or if he had ever told her to go upstairs when she went into the basement where he lived. K.O. replied "no" when asked if she had ever lied to her parents about Jimmy or if she had ever told her dad anything about him. She responded affirmatively when asked if she got hit with a belt when she did something bad and admitted that she has told lies in the past. She denied that a cousin had exposed himself to her or tried to kiss her on the mouth. Defense counsel never actually broached the subject of the alleged crime, but K.O. did respond to all questions put to her. The trial court ruled that K.O. was available as a witness.

I believe that the present case is more akin to Garcia-Cordova. Unlike the child in Rolandis G., K.O. never refused to respond. Rather, as in Garcia-Cordova, K.O. continued to answer questions, despite needing two recesses. Furthermore, unlike both Rolandis G. and Garcia-Cordova, defense counsel actually engaged in some cross-examination of K.O. K.O.'s answers may not have been what counsel was seeking to elicit; however, we found that to be of no consequence in Garcia-Cordova. In this case, many of K.O.'s responses were claims that she did not know certain things or could not remember various events.

The brings us to the question of how we should treat the situation when a declarant asserts lack of knowledge by answering "I don't know" or "I don't remember." The weight of authority holds that the fact that a witness does not recall something does not render the witness unavailable. See Garcia-Cordova, 392 Ill. App. 3d at 483 ("[T]he Illinois Appellate Court has held on numerous occasions that claims of memory loss and denials of making previous statements do not necessarily require a finding that the witness was unavailable for cross-examination" (collecting cases)); People v. Bakr, 373 Ill. App. 3d 981, 987 (2007) ("[N]o confrontation clause problems exist simply because a declarant's alleged memory problems precluded the declarant from being cross-examined to the extent that defense counsel would have liked" (emphasis added)); People v. Desantiago, 365 Ill. App. 3d 855, 869 (2006); see also People v. Sutton, 233 Ill. 2d 89, 122-23 (2009) (holding that, under United States v. Owens, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988), a witness is available for cross-examination even when the witness cannot recall past events). Thus, the fact that K.O. testified that she did not know of or could not recall certain events did not render her unavailable. The ultimate question, in my view, is not how the declarant responds, it is whether the declarant does so. In this case, K.O. took the stand under oath and responded to all questions put to her by defense counsel. I submit that this is all that is required to satisfy the confrontation clause.

I also disagree that K.O.'s statement to C.O. was not sufficiently corroborated to warrant its admission in accordance with section 115--10. "Corroborate" simply means " 'to add weight or credibility to a thing by additional or confirming facts or evidence.' " In re Alba, 185 Ill. App. 3d 286, 290 (1989), quoting In re Custody of Brunken, 139 Ill. App. 3d 232, 239 (1985). I note that the legislature did not qualify the term "corroborative evidence" in section 115--10. See 725 ILCS 5/115--10(b)(2)(B) (West 2002). Since it is improper to read into a statute any limitations or conditions that

the legislature did not express (People v. Youngblood, 365 Ill. App. 3d 210, 211 (2006)), any amount of corroboration is sufficient to satisfy the statute.

In this case, K.O.'s statement was corroborated by her behavior. Specifically, K.O. touched her younger sibling's penis in an unusual manner as C.O. changed his diaper. See People v. Hill, 289 Ill. App. 3d 859, 864 (1997) (holding child's knowledge of sexual matters relevant to determining whether child was abused). It was in this context, after being told not to behave in this manner, that K.O. uttered, "Jimmy does it." Admittedly, as the majority points out, the evidence available in Rolandis G., 232 Ill. 2d at 43-44, provided more corroboration for the statements at issue in that case. Slip op. at 17. Nevertheless, in my view, the language of the statute does not require a great degree of corroboration to allow the admission of such statements. Accordingly, I would also hold that K.O.'s statement to C.O. is admissible under section 115--10.