**NOTICE**
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230614-U

NO. 4-23-0614

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JEROME H. WALLACE, | ) | No. 19CF268 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Raylene D. Grischow, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant was not denied his right to a fair trial and sentencing hearing.

¶ 2    In March 2019, the State charged defendant, Jerome H. Wallace, by information with three counts of delivery of a controlled substance (720 ILCS 570/401(d) (West 2018)) and one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). After a September 2022 trial, a jury found defendant guilty of one count of delivery of a controlled substance and one count of unlawful possession of a controlled substance.  Defendant filed a timely posttrial motion and later amended the motion to include an argument the prosecutor made an improper statement regarding the constitution in his rebuttal closing argument.  At a joint December 2022 hearing, the Sangamon County circuit court denied defendant's amended posttrial motion and sentenced him to concurrent prison terms of eight years for delivery of a controlled substance and two years for unlawful possession of a controlled

substance. Defendant filed a timely motion to reconsider his sentence, which the court denied in June 2023.

¶ 3        Defendant appeals, contending he was denied his right to a fair (1) trial because of an improper statement by the prosecutor in rebuttal closing argument and (2) sentencing hearing because the trial court considered the harm to society inherent in the delivery of a controlled substance as a factor in aggravation. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        Count I of the information alleged, on March 14, 2019, defendant knowingly and unlawfully possessed with the intent to deliver less than one gram of a substance containing cocaine. Count II asserted defendant committed the same actions on March 15, 2019, and count III alleged the same for March 20, 2019. Count IV charged, on March 20, 2019, defendant knowingly had in his possession less than 15 grams of a substance containing cocaine.

¶ 6        In September 2022, the trial court held a jury trial on the aforementioned charges. In the prosecutor's opening statement, he explained how law enforcement conducted controlled purchases of drugs and used confidential informants. He indicated the "confidential informant" in this case was not expected to testify. In her opening statement, defense counsel noted the State did not have a "confidential" informant to show the jury. She indicated no one would testify they bought drugs from defendant.

¶ 7        The State presented the testimony of the following individuals: (1) Lynn Evans, an employee of the Sangamon County Sheriff's Office; (2) Lee Rowden, a detective for the Sangamon County Sheriff's Office; (3) Stacey Komnick, a detective for the Sangamon County Sheriff's Office; (4) Nicholas Waters, a former correctional officer at the Sangamon County jail; (5) Devon Birks, an investigator for the Sangamon County Sheriff's Office; (6) Patrick

McMasters, a detective for the Sangamon County Sheriff's Office; and (7) Joshua Stern, a scientist with the Illinois State Police Forensic Laboratory. Defendant did not present any evidence.

¶ 8         Detective Rowden gave an in-depth description of the use of confidential informants in apprehending drug dealers. In late January 2019, he registered an informant named Nikita Feig. At that time, Feig had recently been arrested for possession of a controlled substance. From March 14, 2019, to March 20, 2019, Feig assisted in a series of controlled buys targeted at defendant. Feig had chosen defendant as the target. She arranged the meetings between her and defendant. Detective Rowden also testified Feig was paid $50 for each controlled buy and he believed her possession of a controlled substance charge was dismissed.

¶ 9         On March 14, 2019, Detective Rowden met with Feig before the first controlled buy. She arrived at the meeting place by car, and Detective Rowden searched both her and her car for any controlled substance. He did not find any. Detective Rowden provided Feig with $40 or $50 in cash, which was official advanced funds, and placed a video recording device on an article Feig could carry. Feig drove away, and Detective Rowden followed her. Feig parked at a strip mall, and Detective Rowden continued to keep Feig under surveillance. Eventually, a blue Chevrolet sedan arrived and parked next to Feig's vehicle. Feig exited her vehicle and got into the driver's side rear seat of the blue Chevrolet. Detective Rowden could only tell the driver was a black male. He was unable to positively identify the driver. Feig was in the car for about a minute and then returned to her car. Both vehicles drove away, and Detective Rowden kept Feig under surveillance as she drove to their designated meeting place. There, Feig gave him approximately a half gram of crack cocaine that was not packaged. Detective Rowden again searched Feig's person and vehicle and found no controlled substances. Detective Rowden later

reviewed the video for the controlled buy. The video accurately showed the day's events but did not capture the controlled buy because the camera was not pointed in the correct direction.

¶ 10　　　　　The second controlled buy was planned for March 15, 2019. The same events took place on that day as well. However, when Detective Rowden and Feig were at their meeting spot, Feig received communication from defendant. Feig left the strip mall and went to a residence on South 17th Street. There, Feig parked in the driveway, and a person fitting defendant's description approached the passenger side of the vehicle. Detective Rowden could observe the person but could not make a positive identification due to his distance from Feig's vehicle. The person leaned into the passenger side of Feig's vehicle and appeared to make an exchange. The person then went back into the residence but immediately returned to Feig's vehicle and entered the passenger side. Feig drove the person to the 1900 block of South 19th Street, where she stopped the vehicle. Detective Rowden testified defendant lived in the 1900 block of South 19th Street in March 2019. There, the person exited the vehicle and walked in the roadway. Feig drove away and went to the prearranged meeting spot. There, Detective Rowden received the crack cocaine and recording device from Feig. Detective Rowden kept Feig under surveillance the entire time. Like the day before, the video did not capture the controlled buy.

¶ 11　　　　　A third controlled buy was set for March 20, 2019. With this buy, the plan was to stop defendant's vehicle after the controlled buy. Feig again made the arrangements for the controlled buy. On March 20, 2019, Feig arrived on foot. The same protocols were followed, except there was no vehicle to search. This time Feig waited on foot in front of a store. A silver Tahoe arrived, which was occupied by two black males. Feig entered the vehicle through the rear passenger door. Detective Rowden testified Feig was in the vehicle for about a minute and the vehicle immediately left upon her exit. Detective Komnick was responsible for maintaining

surveillance of the Tahoe, and Detective Rowden met with Feig, who gave him crack cocaine and the video recording equipment. The trial court admitted four still photographs from the recording on March 20, 2019, and Detective Rowden identified defendant in one of the photographs. Moreover, the video recordings of all three controlled buys were played for the jury. Those videos lacked an audio component.

¶ 12　　　　After meeting with Feig, Detective Rowden went to the location where Detective Komnick had stopped the Tahoe. He identified Terrance Wallace as the driver of the vehicle and defendant as the front passenger. Detective Rowden found the official advanced funds provided to Feig on March 20, 2019, in defendant's coat pocket. A crack pipe and cocaine were later recovered from defendant's person. Additionally, a cell phone was located in the Tahoe. Detective Rowden called the number that had been used in the narcotics transactions, and the cell phone rang. Defendant's face was also the background photograph on the cell phone. No drugs were found in the Tahoe.

¶ 13　　　　The State also played a recording of a call defendant made to a female from the Sangamon County jail on March 20, 2019. Defendant stated "Nikita" twice and also stated "Brent, white car." Detective Rowden testified Feig drove a white car at the time and had dated a man named Brent.

¶ 14　　　　Birks testified his job responsibilities included serving subpoenas. He explained he needed to have face-to-face contact with the person to whom he was serving the subpoena. A few weeks before trial, Birks had been asked to locate Feig. Defense counsel objected to the testimony asserting it was irrelevant. The prosecutor argued defense counsel had been calling into question the State's efforts to have Feig testify at defendant's trial and believed defense counsel would argue her absence created reasonable doubt. The trial court allowed Birks to

testify over defense counsel's objection. Birks testified he was able to speak to Feig's mother, who provided him with a telephone number for Feig. Birks called the telephone number, and a female answered. The female was very agitated he had called. Birks explained to her what she needed to do, and the female was adamant not to call her anymore. She noted "that was in the past" and she wanted nothing to do with this case. Birks believed the female was Feig. Birks was never able to serve Feig with a subpoena and believed he had utilized every tool he could to serve her.

¶ 15    Stern testified all of the substances recovered from the three controlled buys and the one substance recovered from defendant's person were tested and each one was found to be less than a gram of a chunky substance containing cocaine.

¶ 16    During closing arguments, defense counsel questioned Feig's absence from defendant's trial and argued that created reasonable doubt. She also asserted defendant never got his constitutional right to confront Feig. Defense counsel explained defendants have a constitutional right to confront their accuser and contended the State did not think defendant was worthy of that right. In rebuttal, the prosecutor contended defense counsel wanted the jurors to believe the law was something it was not. He further told the jury they would not hear anything about the constitutional right to confrontation and noted that was something for a judge to decide. The prosecutor then told the jury they did not need to worry about the constitution. Defense counsel did not object to the rebuttal argument.

¶ 17    At the conclusion of the trial, the jury found defendant guilty of delivery of a controlled substance on March 20, 2019, and unlawful possession of a controlled substance but not guilty of delivery of a controlled substance on March 14, 2019, and March 15, 2019.

¶ 18    On October 25, 2022, defendant filed a motion for acquittal or, in the alternative,

a motion for a new trial. In December 2022, defendant filed an amended posttrial motion, which argued, among other things, the prosecutor's statement regarding the constitution in his rebuttal closing argument was improper. At the beginning of the hearing on December 28, 2022, the trial court addressed defendant's amended posttrial motion. After hearing the parties' arguments, the court denied defendant's amended posttrial motion. The court then proceeded to defendant's sentencing hearing. The parties agreed the delivery of a controlled substance count was a Class 2 felony (720 ILCS 570/401(d) (West 2018)), was probation eligible, and the applicable prison sentencing range was 3 to 14 years (730 ILCS 5/5-4.5-35(a), 5-8-2(a), 5-5-3.2(b)(1) (West 2018)). In sentencing defendant to concurrent prison terms of eight years for delivery of a controlled substance and two years for possession of a controlled substance, the court agreed with the State's assessment of the factors in aggravation and stated the following: "I did too note his conduct threatened serious harm, and while there was no actual physical harm, I did consider the drug dealing in the community and the effect that it has on individuals in our community."

¶ 19    On January 8, 2023, defendant filed a motion to reconsider his sentence, asserting his sentence was excessive and the trial court failed to accord sufficient weight to the applicable mitigating factors, including defendant's conduct did not cause or threaten serious physical harm and defendant did not contemplate his conduct would cause or threaten serious physical harm. At a June 16, 2023, hearing, the court denied defendant's motion to reconsider his sentence.

¶ 20    On July 11, 2023, defendant filed a timely notice of appeal, but it did not comply with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). On August 8, 2023, defendant filed a timely motion for leave to file an amended notice of appeal, which this court allowed. See Ill. S. Ct. R. 606 (eff. Mar. 12, 2021); R. 303(b)(5), (d) (eff. July 1, 2017). The August 10, 2023, amended notice of appeal complied with Rule 606. Thus, this court has jurisdiction of

- 7 -

defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb 6, 2013).

¶ 21                                II. ANALYSIS

¶ 22                              A. Closing Argument

¶ 23        Defendant first argues he was denied his right to a fair trial due to a prosecutorial statement during closing arguments.  He recognizes he did not preserve the error for review and requests this court review the matter under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).  Defendant also contends trial counsel rendered ineffective assistance by not objecting to the prosecutor's improper statement.

¶ 24        The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

¶ 25        With a plain-error analysis, the reviewing court first determines whether any error occurred at all.  *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059.  If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059.  Under both prongs, the defendant bears the burden of persuasion.  *Sargent*, 239 Ill. 2d at 190, 940 N.E.2d at 1059.

¶ 26        This court analyzes ineffective assistance of counsel claims under the standard set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 27    Our supreme court has explained the review of prosecutorial statements made during closing arguments as follows:

"Prosecutors are afforded wide latitude in closing argument. [Citation.] In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them. [Citation.] Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction. [Citation.] If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. [Citation.]" *People v. Wheeler*, 226 Ill. 2d 92, 123, 871 N.E.2d 728, 745 (2007).

Moreover, a prosecutor may respond to defense counsel's comments in closing argument which clearly invite a response. *People v. Johnson*, 208 Ill. 2d 53, 113, 803 N.E.2d 405, 439 (2003). "Such comments must be considered in the proper context by examining the entire closing argument of the parties." *Johnson*, 208 Ill. 2d at 113, 803 N.E.2d at 439.

¶ 28    Near the end of her closing argument, defense counsel argued defendant never got

his constitutional right to confront Feig, the informant.  She further stated, "You have a constitutional right to confront your accuser, and the Government didn't think that that was something that my client was worthy of, I guess."  In rebuttal argument, the prosecutor noted he had stated in opening statements Feig would not testify and explained why.  He further argued the law does not provide the defendant must be acquitted if the informant does not testify.  The prosecutor then stated the following:

> "You're not going to hear anything about some constitutional right to confrontation.  That would be something that the Judge decides.  Don't worry, you don't have to worry about constitution here."

¶ 29        Defendant contends the prosecutor's comments rendered his trial unfair for two reasons.  He first asserts the prosecutor's language suggests the right to confront one's accuser was not a real right.  Second, defendant contends the prosecutor instructed the jury to disregard the constitution.  He suggests it is a "reversed form of jury nullification."  The State asserts defendant is estopped from raising this argument based on the invited error doctrine.  While defense counsel's closing argument invited a response, it did not invite error.  Thus, we decline to find defendant is estopped from raising his argument.

¶ 30        We begin by examining the right to confrontation.  The sixth amendment (U.S. Const., amend. VI) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8) grant an accused the right "to be confronted with the witnesses against him."  (Internal quotation marks omitted.) *People v. Learn*, 396 Ill. App. 3d 891, 900, 919 N.E.2d 1042, 1049 (2009).  The United States Supreme Court has explained the confrontation clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).

The " 'confrontation' " is "a witness's bearing of testimony against the defendant; the defendant then has the right to rigorously test that testimony through cross-examination." *Learn*, 396 Ill. App. 3d at 900, 919 N.E.2d at 1050.

¶ 31   Here, Feig was the person who executed the police's controlled buy, but she refused to cooperate with the subpoena process. She did not bear testimony against defendant at his trial, and in his brief, defendant does not identify any out-of-court statements by Feig used at his trial. Moreover, no confrontation clause issues were raised during defendant's trial. Defense counsel did not demonstrate how Feig's mere absence from defendant's trial violated his constitutional right to confrontation, and it was proper for the State to respond to defense counsel's argument. The State was correct a violation of defendant's constitutional right to confrontation was not an issue in the manner suggested by defense counsel. We disagree with defendant's allegation the State's comment suggested the right to confrontation was not real. The prosecutor was pointing out the right to confront Feig was not at issue in the case.

¶ 32   Regarding defendant's suggestion the prosecutor's comments instructed the jury to ignore the constitution, defendant reads the statement in isolation. When the sentence is read in the context of the entire closing arguments, the prosecutor is referencing the fact the jury need not be concerned with a violation of the constitutional right to confrontation. Given no confrontation clause violations were at issue in this case, we disagree with defendant the prosecutor's statement threatened the integrity of his trial.

¶ 33   Accordingly, the prosecutor's statements in rebuttal closing argument were not improper. As such, we need not address defendant's arguments regarding plain error and ineffective assistance of counsel.

¶ 34                    B. Sentencing

- 11 -

¶ 35    Defendant also alleges the trial court denied him a fair sentencing hearing by considering the harm to the community as a factor in aggravation when the legislature had considered the harm to society in establishing the sentencing range for delivery of a controlled substance. The State asserts defendant has forfeited this issue and fails to argue plain error. In his rebuttal brief, defendant asserts, if the issue is forfeited, then he seeks review under the plain-error doctrine. We agree with the State defendant did not raise his claim in his motion to reconsider his sentence, and thus defendant must establish plain error. In the context of sentencing, the defendant must show either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010).

¶ 36    The parties also disagree on the standard of review. Defendant asserts the *de novo* standard of review applies. See *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459 (addressing the allegation of consideration of an improper sentencing factor). The State suggests the abuse of discretion standard is appropriate. See *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 99, 145 N.E.3d 544 (addressing an excessive sentence claim). We find the alleged error raised by defendant is essentially a claim the trial court imposed an excessive sentence. See *People v. Johnson*, 2019 IL 122956, ¶ 39, 129 N.E.3d 1239 (noting the defendant raised an excessive sentence argument when the defendant claimed he would have received a lower sentence if the court had not erred in its application of the statute and, thus, erroneously considered statutory factors). With excessive sentence claims, this court has explained appellate review of a defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility,

- 12 -

demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341.

See also *People v. Alexander*, 239 Ill. 2d 205, 212-13, 940 N.E.2d 1062, 1066 (2010). Here, defendant was extended-term eligible, and thus the sentencing range for delivery of a controlled substance (720 ILCS 570/401(d) (West 2018)) was 3 to 14 years' imprisonment (730 ILCS 5/5-4.5-35(a) (West 2018)). Accordingly, the trial court's eight-year sentence was within the statutory sentencing range.

¶ 37        The prohibition against consideration in aggravation of a factor inherent in the offense "is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." (Internal quotation marks omitted.) *People v. McGath*, 2017 IL App (4th) 150608, ¶ 64, 83 N.E.3d 671. However, the trial court can consider the nature and circumstances of the offense. *People v. Saldivar*, 113 Ill. 2d 256, 268, 497 N.E.2d 1138, 1143 (1986). "It is not improper

*per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking." *People v. McCain*, 248 Ill. App. 3d 844, 852, 617 N.E.2d 1294, 1300 (1993).

¶ 38    Some of the statutory aggravating factors have the opposite statutory mitigating factor. Section 5-5-3.2(a)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(a)(1) (West 2018)) lists as a factor in aggravation "the defendant's conduct caused or threatened serious harm." On the other hand, section 5-5-3.1(a) of the Unified Code provides the following as mitigating factors:

> "(1) The defendant's criminal conduct neither caused nor threatened serious physical harm to another.
>
> (2) The defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." 730 ILCS 5/5-5-3.1(a) (West 2018).

¶ 39    It is well-established it is improper for a sentencing court to consider the general societal harm as a statutory aggravating factor under section 5-5-3.2(a)(1). *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300. However, it is proper for the court to consider the societal harm in finding the mitigating factors set forth in sections 5-5-3.1(a)(1) and (2) do not apply. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 28, 138 N.E.3d 247. As such, it is understandable how a court could "muddle" the consideration of the general threat to society in drug cases. While the alleged error in this case seems to be the result of careless language, we recognize the prosecutor in this case should not have noted the impact drugs have on the community in general in addressing the applicable statutory aggravating factors. Instead, the prosecutor should have argued the general harm to the community in asserting why the statutory mitigating factors related to harm did not apply. The prosecutor's inarticulate argument led the trial court to

improperly find the general threat of harm to the community was a statutory aggravating factor.

¶ 40    However, defendant has failed to show the improper finding was plain error. As to first prong error, we disagree with defendant the evidence was closely balanced. While defendant was an addict, had a rough childhood, and had two very young children, he had an extensive criminal history. Defendant had eight prior felony convictions and four prior misdemeanor convictions. He committed the offenses in this case while on bond and had more than a dozen charges pending in three different counties at the time of his sentencing. As defendant himself recognizes, the need for deterrence was also present in this case.

¶ 41    Defendant also fails to establish second prong plain error. Defendant simply asserts any finding of an improper aggravating factor is second prong plain error. However, in this case, the record shows the weight given to the threat of harm did not lead to a greater sentence. The trial court explained the fact defendant had been given opportunities to help himself and he did not take advantage of those opportunities "weighed heavily" on the court. The court also found probation would deprecate the seriousness of the offense. Defendant had an extensive criminal history and inability to comply with court orders, as he committed these offenses while on bail. His 8-year sentence was in the middle of the sentencing range and significantly less than the 12 years requested by the State.

¶ 42    Accordingly, we find defendant has not established the trial court's comments regarding the threat of harm to the community was plain error.

¶ 43                                III. CONCLUSION

¶ 44    For the reasons stated, we affirm the Sangamon County circuit court's judgment.

¶ 45    Affirmed.