Sixth Division
January 29, 2010

No. 1-08-0777

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 06 CR 4057 |
| | ) | |
| MICHAEL MAJOR-FLISK, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | David P. Sterba, |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial, defendant, Michael Major-Flisk, was found guilty of one count of aggravated criminal sexual assault against the five-year-old victim M.O. The trial court sentenced defendant to a term of six years' imprisonment. On appeal, defendant contends that the trial court erred by allowing testimony of out-of-court statements made by the victim pursuant to the hearsay exception for sexual abuse victims under the age of 13 (725 ILCS 5/115-10 (West 2006)). For the reasons that follow, we affirm.

Defendant was arrested and charged by indictment with 7 counts of aggravated criminal sexual assault, 14 counts of criminal sexual assault, 5 counts of aggravated criminal sexual abuse, and 10 counts of criminal sexual abuse. The two counts that were ultimately submitted to the jury alleged that defendant committed aggravated criminal sexual assault based upon penetration of the victim's anus by defendant's finger and contact between defendant's mouth and the victim's penis. These counts also alleged that defendant was under 17 years of age at the time of the alleged offense and that the victim was under 9 years of age when the act was committed. See 720 ILCS 5/12-14(b)(i) (West 2006). Defendant was found guilty of the first count.

1-08-0777

Prior to trial, the State filed a motion indicating that it intended to introduce statements made by the victim through the testimony of certain witnesses. The State also requested a hearing to determine whether the victim's hearsay statements were sufficiently reliable to be admitted under section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2006)). At this hearing, which was held on February 6, 2007, the State informed the trial court that the victim, seven-year-old M.O., would testify at trial and offered the testimony of three witnesses to M.O.'s hearsay statements.

Celine M., M.O.'s aunt, testified that on January 22, 2006, M.O. was dropped off at her home by his mother. Subsequently, M.O. was at the kitchen table with several other boys talking "boy talk" when Celine, who was approximately 15 to 20 feet away at a nearby computer with her son, heard M.O. say, "Michael stuck his finger up my butt." The boys "went just crazy," and said "that's gross [and] that's disgusting." Celine moved closer to the boys and then heard M.O. say, "and he stuck his tongue in my mouth." This statement was followed by "more uproar." The other boys were repeating the things that M.O. said and one of the boys told Celine's son, "you got to tell your mom." Celine then sent all of the boys except M.O. downstairs and asked M.O. if what he said was true. M.O. nodded yes and then "clammed up" as if he did not want to say anymore. Celine called M.O.'s mother and told her to come over at once.

On cross-examination, Celine explained that she was not visible to the boys when they were talking because the kitchen is an "L-shaped" room and the refrigerator blocked the boys' view of her. Celine also explained that she paid attention to all of the details of the boys' conversation, testifying that she always paid attention to these conversations because "you would

2

be surprised what you find out." Celine spoke to a detective from the Evergreen Park police department the following evening. Celine also testified that she did not tell the detective that she was in an adjoining room but that she did tell the detective that the boys were repeating what they heard and that one of those boys said, "Mike stuck his tongue in [M.O.'s] mouth and his finger in [M.O.'s] butt."

The victim's mother, Lori O., testified that she went to Celine's home after receiving a call from her at approximately 11:30 a.m. She spoke to Celine and then she and her husband went to the police station. M.O. remained at Celine's home during this time and Lori had not yet spoken to her son. After speaking with an officer at the police department, Lori picked up M.O. and went home. She gathered her husband, M.O., and his brother Andrew in the family living room and explained to her two sons that they were going to have a conversation and that it was important to tell the truth. Lori did not give the children the facts about what Celine had told her, but instead asked M.O., "What did you say to Aunt Celine?" According to Lori, M.O., "actually took a deep breath, like a big relief was like off his chest, and he indicated to me that Michael Major had put his hand down his pants, [M.O.'s] pants." Lori asked M.O. where this happened, and M.O. responded, "on Michael's front porch." She asked M.O. if that was all that happened, and he said yes.

Lori then explained to M.O. that what he said was serious and that it was important that he was not "fabricating a story" and that he was telling "the absolute truth." M.O. then said that "Michael had showed him his penis" and that he gave M.O. his video game "so that I would keep his secret from everybody." Lori did not say anything further because M.O. was five years old

and she did not want him to feel that she had to know all the information right away. Therefore, she "just kind of said okay, [M.O.]," and accepted his answer for the time being.

Lori was later contacted by the police regarding having M.O. attend a victim-sensitive interview. She brought him to that interview on January 25, 2006. She did not tell M.O. what to say during the interview and only told him where they were going on the morning they left for the interview. At that time, Lori told M.O. that "this is where we were going, and these people are here to help us." She also told him that it was "important to tell them the same thing that you told mom and dad, and most importantly, you have to tell the truth."

On cross-examination, Lori testified that during their first telephone conversation, Celine did not tell her what had happened but only that it was important for her and her husband to come to Celine's home as soon as possible. When Lori and her husband arrived at the home, Celine told her about the conversation among the boys that she had overheard. Lori further testified that she spoke to M.O. about strangers and inappropriate touching several weeks prior to the incident and that he did not say anything at that time. Lori also testified that M.O. told her that defendant showed him his penis on defendant's porch. Lori explained that defendant lived next door to her and she described the porch as being open but having an obstructed view from the street or sidewalk. Lori further testified that prior to the victim sensitive interview, she told M.O. that the police and friends of the police wanted to talk to him. M.O. said that "he didn't want to talk to anybody about this." Lori told him that it would be a "friendly conversation" and that "it was important that he talk to these people." She also asked M.O. when the incident happened, and he responded "after school." She also asked him if it happened more than once, and he said that it

4

had.

Danielle Butts, the director and forensic interviewer for the Children's Advocacy Center of Southwest Cook County (the Center), interviewed M.O. at approximately 11 a.m. on January 25, 2006. The interview was conducted in an interview room at the Center, which Butts described as containing a one-way mirror and children's furniture. Detective Jack McCarthy from the Evergreen Park police department and an assistant State's Attorney (ASA) were in an adjoining observation room and observed the interview through the one-way mirror.

When M.O. arrived at the Center, he agreed to speak with Butts in an interview room. Butts asked M.O. his name, age and grade, and M.O. responded with his name, that he was five years old, and that he was in kindergarten. Butts asked M.O. to identify colors, to distinguish between a truth and a lie, inside and outside and on top of and under, and to identify body parts using an anatomically correct male doll that was fully clothed. M.O. was able to complete all of these requests. Butts asked M.O. if he knew why he was at the Center, and he said it was because "his friend was a bad guy." M.O. stated that his friend was "Mike Major." Butts then asked M.O. if anyone told him not to talk to her or what to say, and M.O. responded no.

M.O. told Butts that he was five years old when the events occurred and that they occurred on "Mike's front porch" and "one time in his own basement." Butts asked M.O. what happened, and he stated that "Mike put his hand down the front of his pants, Mike put his tongue in [M.O.'s] mouth, and Mike put his finger on [M.O.'s] butt." When asked how this felt, M.O. said, "it felt bad." Butts asked if anything else happened, to which M.O. responded, "Mike put his mouth on [M.O.'s] penis," that "Mike touched his penis to [M.O.'s] penis," and that "Mike put

his finger in [M.O.'s] butt." Butts asked M.O. if he put his mouth on defendant's penis, and M.O. said no. Butts asked where this happened, and M.O. stated that it happened on "Mike's front porch." M.O. also stated that his brother witnessed these events.

M.O. also told Butts that "Mike put his finger inside his butt," and that he also "tried to put his penis inside his butt." When asked how this felt, M.O. said that it felt "very very very bad." When asked if anything else happened, M.O. said "Mike had him touch his penis and squeeze it" but nothing came out. M.O. stated that he was in kindergarten when this happened and that it occurred both before and after Halloween. When asked how many times this happened, M.O. said it happened "all the time when he went over to Mike's house on the front porch, and it happened one time in his basement." When Butts asked M.O. to show her what happened using the anatomically correct doll, M.O. turned the doll over, pulled down its pants, bent it over, and pointed to the doll's anus indicating that he had inserted his finger into the anus.

On cross-examination, Butts testified that she had spoken to a detective and an ASA and had been briefed about the investigation prior to interviewing M.O. She was therefore aware that there had been allegations of sexual contact between defendant and the victim. The detective and ASA could see and hear the interview with M.O., although Butts did not tell him that the two were observing the interview. Butts asked M.O. if it was good or bad to tell the truth or lie, and M.O. stated that it was good to tell the truth and bad to lie. Butts did not take notes or prepare a report of the interview because this was being done by a police officer. She also testified that she did not ask M.O. about specific acts or locations but, rather, asked him open-ended questions such as "What happened." Butts also only told M.O. that her name was Danielle and that she was

there to talk to M.O., but she did not tell him the purpose of their conversation.

The parties stipulated to the testimony of Detective McCarthy. According to the stipulation, Detective McCarthy would testify that, consistent with his police report, he spoke with Celine on January 25, 2006. Although not verbatim, Celine told the detective that she heard her son's friend, Phillip, twice say "you got to tell your mom," that she heard M.O. say, "he stuck his tongue in my mouth," and that one of the boys said, "Mike stuck his tongue in [M.O.'s] mouth and his finger in [M.O's] butt."

The trial court granted the State's motion to admit M.O.'s statements. With respect to the statements that M.O. made to his mother and the statements overheard by Celine, the court found that they were not testimonial in nature and that the time, content and circumstances of those statements provided sufficient safeguards of reliability. Therefore, the court found that if M.O. testified at trial or was judicially declared "unavailable" and there was corroborating evidence of the acts which were the subject of the statements, M.O.'s statements would be admitted through the testimony of Lori and Celine. With respect to the statements made to Butts, the court found that they were testimonial in nature and therefor subject to the confrontation clause contained in the sixth amendment. The court further found that if the child did in fact testify at trial, as the State had indicated he would, the confrontation clause placed no limits on the introduction of M.O.'s statements to Butts because defendant would have the opportunity to cross-examine M.O. Finally, the court found that the time, content and circumstances of M.O.'s statements to Butts provided sufficient safeguards of reliability and that, therefore, if M.O. testified at trial, these statements would be admitted.

7

1-08-0777

The following evidence was presented at defendant's trial.

M.O. testified that he was currently seven years old and in second grade. M.O. identified defendant as his neighbor and as someone with whom he played in his basement and in defendant's bedroom. Defendant would also grab M.O.'s hands and swing him around in his front yard, and M.O. testified that defendant did not do anything to him that he thought was "bad" when they played these games. M.O. also testified, however, that defendant touched him when he was on defendant's front porch by making M.O. "sit on his hand." When asked if he remembered whether defendant touched him in any other way, M.O. responded, "uhm, no." M.O. then gave the following testimony under direct examination:

"Q. [M.O.], did you ever talk to your mom and tell her that Michael Major touched you?

A. Uhm, no.

Q. [M.O.], did you ever speak with your Aunt Celine and tell her that Michael Major touched you?

A. Uhm, yes.

Q. You did?

A. Yes.

Q. Do you remember when that was, [M.O.]?

A. Uhm, last night we – when we were at Oberweis.

Q. You told her at that time that he had touched you?

A. Uhm, no.

8

Q. [M.O.], did you ever tell your Aunt Celine before last night that Michael touched you?

A. No.

Q. [M.O.], do you remember when you were in kindergarten?

A. Nope.

Q. Do you remember going with your mom to visit and speak with a lady at a big house about Michael Major?

A. No.

Q. [M.O.], do you remember going and speaking with a lady and giving her a doll and asking you to show her on that doll if Michael Major ever touched you?

A. No.

Q. [M.O.], do you remember when the last time that it was when you played with Michael Major?

A. No."

On cross-examination, defense counsel had M.O. identify a photograph of his and defendant's homes. Counsel did not ask M.O. any further questions.

Celine and Lori testified consistently with their testimony at the pretrial hearing. Lori added that she allowed her sons to play in defendant's front yard but that she did not allow them to enter his house. To her knowledge, the boys followed these directions. Defendant had also

been in Lori's home and had played video games in the basement with her two sons on a couple of occasions. Lori also added that when she arrived at Celine's home, Celine told her that M.O. was talking to the boys and said defendant stuck his hand down M.O.'s pants. During the family meeting, M.O. also told his mom that defendant gave him a video game to keep a secret.

Butts also testified consistently with her testimony during the reliability hearing. She added that M.O. also said that defendant put his mouth on his penis, his penis to M.O.'s penis, and his finger "up [M.O.'s] butt." Butts explained that the interview lasted approximately 15 minutes and she described M.O.'s demeanor during this time as "open." Butts also testified that she does not take notes during interviews and that there is no videotape equipment at the center where the interview took place.

The parties stipulated to the authenticity of defendant's birth certificate that was introduced by the State.[1] The State then rested and the trial court denied defendant's motion for a directed finding.

Defendant called Detective McCarthy as a witness on his behalf. The detective testified that he was assigned to investigate the allegations of sexual abuse regarding defendant and M.O. Detective McCarthy spoke to M.O.'s parents on January 22, 2006, and explained to them how the investigation would proceed. The detective then interviewed Celine at the police station on January 25, 2006. Celine told the detective about a conversation between the boys that she overheard at her home. She told the detective that she was in the adjoining room to the kitchen

---

[1]A copy of defendant's birth certificate is not included in the record. However, according to the presentence investigative report, defendant was born on March 15, 1990.

1-08-0777

when she heard the boys laughing and heard M.O. say, "he stuck his tongue in my mouth." The detective's report did not include any other statements that Celine attributed to M.O., although he explained that it was a summary report and not verbatim or word for word.

The jury found defendant guilty of aggravated criminal sexual assault based upon penetration of M.O.'s anus by defendant's finger and not guilty of aggravated criminal sexual assault based upon contact between defendant's mouth and the victim's penis. The trial court subsequently sentenced defendant to a term of six years' imprisonment. This appeal followed.

Defendant contends that the trial court erred in admitting M.O.'s hearsay statements. Specifically, defendant asserts that M.O. did not testify at trial and that he was "unavailable" for cross-examination because, due to memory loss or otherwise, he did not testify to the elements of the charged offense and did not remember speaking with Butts or Celine. Further, defendant claims that because the only statements constituting evidence of the charged offense were "testimonial," the admission of those statements violated his right to confront the witnesses against him under the confrontation clause of the sixth amendment and the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). Finally, defendant claims that the State failed to meet its burden of establishing that M.O.'s hearsay statements were sufficiently reliable so as to be admitted at trial.

We first consider defendant's claim that M.O. did not testify at trial and that he was unavailable for cross-examination. Defendant asserts that because M.O. "merely appeared to answer general questions" and did not remember certain conversations or testify to the elements of the offense, "there was nothing for defense counsel to cross." Defendant further asserts that

11

although section 115-10(b)(2) of the Code allows the child's hearsay statements to be admitted even when the child does not testify at trial if there is corroborative evidence of the act which is the subject of the statements, there was no such corroborative evidence in this case and therefore M.O.'s hearsay statements were improperly admitted.

As previously noted, the State was allowed to introduce M.O.'s hearsay statements pursuant to section 115-10 of the Code. In relevant part, this section provides:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

> (2) The child * * * either:
>
> (A) testifies at the proceeding; or
>
> (B) is unavailable as a witness and there is
>
> corroborative evidence of the act which is the subject of the
>
> statement[.]" 725 ILCS 5/115-10 (West 2006).

In *Crawford*, the United States Supreme Court held that testimonial out-of-court statements may be admitted as evidence at trial only if the declarant testifies at trial or if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365-66. Our supreme court has stated that section 115-10's requirement that the child be available to testify at the proceeding comports with this limitation. See *People v. Cookson*, 215 Ill. 2d 194, 204 (2005).

We find that defendant cannot now argue that M.O. did not testify at trial and that he was unavailable for cross-examination because that argument is inconsistent with the position defendant took in the trial court. " 'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' " *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000), quoting *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543 (1984). A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court. *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007); *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) (the rule of invited error provides: "a party cannot complain of error which [the] party induced the court to make or to which [the] party consented").

13

1-08-0777

We first note that defendant did not ask the trial court to find M.O. legally "unavailable" after he testified on direct examination or raise the issue that M.O. did not "testify" and was thus unavailable for cross-examination in his posttrial motion. See, *e.g.*, *In re T.T.*, 384 Ill. App. 3d 147, 154 (2008) (where the State asked the trial court to declare the child victim unavailable after she testified on direct examination). Instead, this claim is being raised for the first time on appeal. This alone justifies finding defendant's claim waived. See *People v. Enoch*, 122 Ill. 2d 176, 187 (1988) (the failure to make a timely objection at trial and renew that objection in a written posttrial motion results in the waiver of the right to raise the issue on appeal).

The issue in this case, however, goes beyond mere waiver because defendant took the position at trial that M.O. did testify and that he was available for cross-examination. Specifically, during trial and following the testimony of M.O., Celine and Joan, defense counsel objected to Butts being allowed to testify to M.O.'s hearsay statements because her testimony would be the "only evidence of certain acts" and "not really corroborative of anything." The State responded that corroborative testimony was not needed because M.O. testified before the court, answered all of the questions posed to him by the State and defense counsel, and therefore was "available." In response, defense counsel stated that he "agree[d] with [the State] - [M.O.] did testify and he was available to [*sic*] cross-examination."

After the State rested, defendant made a motion for a directed finding, arguing that the evidence was insufficient for the two counts to go to the jury. Counsel argued that M.O. was "courageous" and that he had given "very candid testimony" but that his testimony did not establish the elements of the charged offenses. Counsel further claimed that aside from defendant

14

making him sit on his hand, M.O. testified that defendant did not touch him in any other way. Counsel further argued:

> "[H]e also testified that he did not tell his mother that Michael touched him and that he did have a conversation with Aunt Celine *** and then he testified again affirmatively and you heard the witness, Judge, and I believe that he was a very mature seven year old and he was being honest as he possibly could; that he testified that he never told Aunt Celine before last night when they were apparently at Oberweis I think he said that Michael touched him. So, we – it's not just the absence of testimony about any criminal act, but it's the affirmative testimony by the alleged victim in this case that the criminal acts alleged did not occur."

Defense counsel reiterated a similar theme in closing arguments in urging the jury to find defendant not guilty. Counsel argued that the jury should believe M.O.'s trial testimony that defendant did not touch him in any way except for making him sit on his hand and that the jury should disbelieve the prior statements testified to by the State's other witnesses. Specifically, counsel stated that M.O. was "a brave young man" who "came in here and he had no agenda, he had nothing, no goal with regard to this proceeding except to tell you the truth." Counsel also stated that M.O. had taken an oath and told the jury what happened, pointing out that M.O. did not testify "about anybody putting a finger up his butt" and "also said he had never even told his aunt or his mother about that." Counsel also urged the jury to reject the State's argument that

15

M.O. may have been nervous or scared, arguing that, "[y]ou had the opportunity to watch him and decide whether he was telling the truth. And I believe very strongly he was. And I believe he told it just the way he remembered it, just the way he told it back two years ago." Later in closing, counsel pointed out that the State asked M.O. if there was anything else that Michael did and that this was M.O.'s opportunity to tell the jury "yes, he put his finger up my butt." Counsel proceeded to argue that, "[n]ow, at that point [M.O.] was in this courtroom testifying. He could have said that, yes, that's what he did. He did not say that because it didn't happen. He didn't say it to this mother because it didn't happen. And he didn't say it to [Celine] either."

Finally, counsel reiterated this theme when arguing to the trial court his motion for a new trial. Among other things, counsel made the following argument:

> "[T]his is a highly unusual case in that it is a rare case where the complaining witness or the alleged victim of the offense does testify and say that, in fact, the offense never occurred. That is I don't believe [*sic*] in dispute here that you heard the testimony from [M.O.] who did come before the Court and testified under oath and he said that at the most he said that there was an incident on a porch where Mike, or the defendant, Michael Major-Flisk, had [M.O.] sit on his hand did not in any way support the single count of the two counts that went to the jury."

This record establishes that defendant objected to the admission of the M.O.'s prior statements on the ground that M.O. did not testify to the specific acts alleged in the indictment

16

and that the only evidence of these acts came in the form of M.O.'s hearsay statements. Defendant did not, however, argue that because M.O. did not remember certain conversations or testify to the acts related in his prior statements, the court should find that he did not testify and that he was "unavailable" within the meaning of section 115-10(2) of the Code or the confrontation clause. Rather, counsel's strategy was apparently to allow M.O.'s testimony on direct examination to stand and to urge the jury to credit that testimony and find that the prior hearsay statements were unbelievable and not credible. Consistent with this strategy, defense counsel only asked M.O. to identify his and defendant's homes on cross-examination and counsel did not explore M.O.'s loss of memory or his testimony that defendant touched him. As a consequence of defense counsel's strategy, the trial court was never asked to make a determination as to whether M.O. "testified" within the meaning of the statute or whether he was available for cross-examination.

Given the posture of the case in the trial court, we believe that it would be unfair to allow defendant to now use M.O.'s testimony to argue on appeal that M.O. did not testify and that he was unavailable for cross-examination such that the State was required to present corroborative evidence of the act which was the subject of the statement. See 725 ILCS 115-10(b)(2)(B) (West 2006). The determination as to whether a child testifies and is available for cross-examination is one committed to the sound discretion of the trial court. *People v. Stechly*, 225 Ill. 2d 246, 313 (2007). This is so because the trial court is in the best position to observe the child's demeanor and determine whether fear or some other factor is preventing the child from communicating in the courtroom. See *In re T.T.*, 384 Ill. App. 3d 147, 157 (2008) ("The trial judge was in the best

position to observe [the child victim's] demeanor and note the duration of her pauses or silence in response to the prosecutor's questions. The decision whether [the child victim] froze involved fact-finding and the trial court's exercise of discretion based on the specific circumstances of the case"); *Stechly*, 225 Ill. 2d at 315 ("The circuit court should not make an unavailability determination lightly"). In this case, where the trial court was not asked to exercise its discretion and rule on M.O.'s availability, we do not believe that this court should make such a determination for the first time on appeal with the benefit of only the transcript of proceedings. Moreover, had defense counsel taken the position during trial that M.O. did not testify and therefore asked the court to make such a ruling, the State might have sought to introduce corroborating evidence in order to obtain the admission of M.O.'s hearsay statements. While we express no opinion as to counsel's strategy, we note that in *United States v. Owens*, 484 U.S. 554, 562, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 844 (1988), the United State's Supreme Court noted that a witness's assertion of memory loss "is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." Moreover, the possibility that counsel's strategy was successful is evidenced by the fact that the jury found defendant not guilty of one of the counts of aggravated criminal sexual assault. Regardless, because of the position defendant took in the trial court, we conclude that he may not now take the position that M.O. did not "testify" and that the State was therefore required to present corroborating evidence.

Moreover, even if we were to consider defendant's contention, we would find it to be without merit. In *Crawford*, the Court also held that where "the declarant appears for cross-

examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9 ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present in court to defend or explain it").

Although not addressed in *Crawford*, two prior decisions of the Court have explained what it means to "appear for cross-examination."  In *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985), the Supreme Court found that the defendant's confrontation rights were not violated where the prosecution's expert witness could not recall the basis for his expert opinion.  The Court stated, "[g]enerally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  (Emphasis in original.) *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294.  Subsequently, in *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 957, 108 S. Ct. at 842, the Supreme Court held that the defendant's confrontation rights were not violated where the victim testified that he remembered identifying the defendant as his assailant during an interview with the Federal Bureau of Investigation but acknowledged that he could not remember seeing his assailant at the time of the attack.  In so holding, the Court stated that when a hearsay declarant is present at trial and subject to unrestricted cross-examination, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements [of the confrontation clause].  *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843. The Court explained:

" 'The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.' " *Owens*, 484 U.S. at 558, 98 L. Ed. 2d at 957, 108 S. Ct. at 842, quoting *Fensterer*, 474 U.S. at 21-22, 88 L. Ed. 2d at 21, 106 S. Ct. at 295.

Our supreme court has relied upon the holdings in *Fensterer* and *Owens* when considering claims similar to that raised by defendant in this case. In *People v. Flores*, 128 Ill. 2d 66, 88 (1989), the defendant claimed that his confrontation rights were violated by the admission of a witness's grand jury testimony that the defendant admitted to that witness that he shot the victim. In contrast to his grand jury testimony, the witness testified at trial that he did not recall speaking with the defendant and therefore the defendant argued on appeal that defense counsel could not cross-examine the witness regarding his prior statements. Our supreme court relied upon *Owens* and *Fensterer* to reject that claim, stating that the admission of a declarant's hearsay statements does not violate the confrontation clause so long as the declarant "is testifying as a witness and subject to full and effective cross-examination," and that "a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for

effective cross-examination." *Flores*, 128 Ill. 2d at 88; see also *People v. Lewis*, 223 Ill. 2d 393, 404 (2006) (citing to *Owens* for the proposition that "the Supreme Court has held that a witness is 'subject to cross-examination' when he or she is placed on the witness stand, under oath, and responds willingly to questions. [Citation.]"); *People v. Sutton*, 233 Ill. 2d 89, 121 (2009), quoting *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843 (" '[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee' "). This court has also issued several decisions holding that a witness's memory loss did not establish that the witness was unavailable for cross-examination. See, *e.g.*, *People v. Desantiago*, 365 Ill. App. 3d 855 (2006); *People v. Bakr*, 373 Ill. App. 3d 981 (2007); *People v. Hampton*, 387 Ill. App. 3d 206 (2008).

Most recently, the Second and Fourth Districts of the Illinois Appellate Court have considered and rejected essentially the same claim as the one raised by defendant in this case. For example, in *People v. Bryant*, 391 Ill. App. 3d 1072 (2009), the defendant argued that the trial court erred by allowing testimony of the declarant's hearsay statements pursuant to section 115-10 of the Code regarding the allegations contained in a count charging the defendant with predatory criminal sexual assault of a child. Specifically, the defendant claimed that the victim did not testify at trial to the facts alleged in that count and that testimony as to those facts was presented only through the hearsay statements of the victim testified to by two other witnesses. *Bryant*, 391 Ill. App. 3d at 1079. The defendant concluded that his rights under the confrontation clause were violated because under those circumstances, the victim was not "available" as a

21

witness or subject to cross-examination. In rejecting that claim, the court noted that under *Crawford* and the confrontation clause, the key inquiry was whether the victim "was present for cross-examination and answered questions asked of her by defense counsel." *Bryant*, 391 Ill. App. 3d at 1083. The court then noted that the victim answered all of the questions put to her by defense counsel and that counsel did not attempt to cross-examine the victim regarding the allegations to which the victim did not testify. Accordingly, the court found that the confrontation clause placed no constraints on the use of the victim's prior statements. *Bryant*, 391 Ill. App. 3d at 1083.

Likewise, in *People v. Garcia-Cordova*, 392 Ill. App. 3d 468, 476-77 (2009), a Department of Children and Family Services (DCFS) worker testified at trial to statements made by the victim during an interview which indicated that the victim had been sexually assaulted. The victim, however, testified on direct examination that she could not recall the contents of those conversations or the incidents of abuse and the defendant chose not to cross-examine the victim. *Garcia-Cordova*, 392 Ill. App. 3d at 472-73. On appeal, the defendant argued that due to the victim's memory loss, she was unavailable for cross-examination on her statements to the DCFS worker because defendant would have been required to first elicit the damaging testimony from the victim and then attempt to refute it. *Garcia-Cordova*, 392 Ill. App. 3d at 480. The appellate court found that the DCSF worker's testimony regarding the victim's statements was admissible under *Crawford* because the victim appeared at trial and testified under oath, was able to make an in-court identification of defendant, and answered all of the questions posed to her on direct examination. *Garcia-Cordova*, 392 Ill. App. 3d at 483-84. The court also found that the victim

was available for cross-examination because the defendant could have questioned her on her inability to remember and could have emphasized that memory loss in arguing the issue of the victim's credibility to the jury. *Garcia-Cordova*, 392 Ill. App. 3d at 484. Essentially the same result that was reached in *Bryant* and *Garcia-Cordova* was also reached in *People v. Kitch*, 392 Ill. App. 3d 108 (2009), and *People v. Sharp*, 391 Ill. App. 3d 947 (2009).

Under the authority discussed above and based upon the facts of this case, we similarly conclude that M.O. testified and that he was available for cross-examination. M.O. appeared at trial and testified under oath that defendant touched him when he was on defendant's front porch by making M.O. sit on his hand. Moreover, although M.O. did not remember certain conversations or testify in greater detail to the manner in which defendant touched him, the record shows that M.O. was present for cross-examination and answered all of the questions posed to him by defense counsel. Although counsel chose not to do so, he certainly could have cross-examined M.O. about his testimony that defendant touched him, whether defendant touched him in any other way, or his inability to remember certain conversations. However, as noted, counsel chose to let M.O.'s direct testimony stand and attempted to use it to destroy the force of M.O.'s hearsay statements. See *Garcia-Cordova*, 392 Ill. App. 3d at 484; *Owens*, 484 U.S. at 562, 98 L. Ed. 2d at 959, 108 S. Ct. at 844. Accordingly, we find that the admission of M.O.'s hearsay statements did not violate defendant's rights under the confrontation clause or *Crawford*. In light of that conclusion, we need not consider defendant's further arguments that M.O.'s hearsay statements testified to by his mother, his aunt, and Butts were "testimonial" and that their admission therefore violated defendant's confrontation rights. See *Crawford*, 541 U.S. at 59 n.9,

23

1-08-0777

158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Additionally, because of our conclusion, the admissibility of M.O.'s hearsay statements is measured solely by whether they meet the requirements of section 115-10 of the Code. See *Bryant*, 391 Ill. App. 3d at 1083 (noting that because the confrontation clause placed no constraints on the use of the victim's hearsay statements, "the question of the admissibility of those prior statements must be measured only by whether they meet the requirements of section 115-10 of the Code" (emphasis omitted)).

Before considering defendant's next argument, we note that, after oral arguments were held in this case, the Second District of the Illinois Appellate Court issued its decision in *People v. Learn*, No. 2–04–1169 (December 4, 2009). In that case, certain witnesses were allowed to testify to hearsay statements made by the minor victim indicating that she had been sexually abused by the defendant. *Learn*, slip op. at 2-5, 8. At trial, however, it took 10 pages of questioning under direct examination before the victim acknowledged that the defendant existed and the only information she gave about the defendant was that he was the husband of the victim's aunt. *Learn*, slip op. at 6, 9. The victim did not testify that the defendant touched her or remember the conversations regarding the defendant that were testified to by other witnesses at trial. When questioned further by the prosecution, the victim began to cry and, after a recess, the prosecution ceased questioning the victim. *Learn*, slip op. at 6-7. Defense counsel asked only 5 questions of the victim and did not elicit any damaging testimony against the defendant. *Learn*, slip op. at 7-8.

The appellate court found that the minor was unavailable as a witness and that she did not "testify" for purposes of section 115-10(b)(2)(A). *Learn*, slip op. at 14. In reaching that

24

conclusion, the court held that "[i]f the child is the only witness (other than hearsay reporters) who can accuse the defendant of actions constituting the charged offense, the child must testify and accuse if she is to be considered to have testified at the proceeding under section 115-10(b)(2)(A)." *Learn*, slip op. at 12. The court also held that mere presence and immaterial or general background testimony "are insufficient to qualify as the appearance and testimony of a witness." *Learn*, slip op. at 12, 14. Reviewing the testimony given at trial, the court noted that the minor did not testify at all about the charge against the defendant and that she "barely acknowledged the people and places about which she was questioned." *Learn*, slip op. at 12. Thus, according to the court, the minor did not "bear testimony" against the defendant because she neither made accusations nor gave relevant and material testimony. *Learn*, slip op. at 12. The court also noted that there was nothing for defense counsel to cross-examine because the victim "did not confront the defendant and accuse him of anything." *Learn*, slip op. at 13.

The decision in *Learn* does not compel us to conclude that M.O. did not "testify" or that he was unavailable as a witness. First, there is nothing in the court's discussion of the facts of that case to suggest that defense counsel took the position taken by defendant in this case that the victim did testify and that he was available for cross-examination. Second, *Learn* is factually distinguishable from the present case. Unlike in *Learn*, the victim in this case did not provide mere general or background testimony. Rather, M.O. confronted defendant with an accusation that defendant touched him and also testified as to the manner in which defendant did so and the location where that touching took place. Thus, unlike in *Learn*, the victim in this case made an accusation against the defendant and gave material and relevant testimony about which he could

25

have been cross-examined.

Defendant next challenges the trial court's determination pursuant to section 115-10(b)(1) of the Code that the "time, content, and circumstances" of M.O.'s hearsay statements provided "sufficient safeguards of reliability." 725 ILCS 115-10(b)(1) (West 2006).

The determination as to whether the hearsay statements were sufficiently reliable so as to be admitted is committed to the discretion of the trial court and the court's decision will not be reversed absent a clear abuse of that discretion. *Stechly*, 225 Ill. 2d at 312-13. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Sharp*, 391 Ill. App. 3d at 955.

In this case, as the proponent of the hearsay evidence, the State bore the burden of establishing that the declarant's hearsay statements were reliable. *People v. Cookson*, 215 Ill. 2d 194, 204 (2005). A reliability determination is based upon the totality of the circumstances, but relevant factors include the child's spontaneity and consistent repetition, use of terminology unexpected of a child of similar age, lack of motive to fabricate, and the child's mental state. *Stechly*, 225 Ill. 2d at 313; *Sharp*, 391 Ill. App. 3d at 955.

Defendant first claims that the hearsay statements recited by Celine were unreliable and therefore improperly admitted. Specifically, defendant claims that according to his stipulated testimony during the reliability hearing, Detective McCarthy's police report indicated that Celine told him that she heard M.O. say "he stuck his tongue in my mouth." According to defendant, no record exists of Celine telling the police that she also heard M.O. say, "Michael stuck his finger up

26

my butt." Defendant further argues that Celine was impeached for failing to testify that she did not know which boy said, "Mike stuck his tongue in [M.O.'s] mouth and his finger in [M.O.'s] butt." Defendant concludes that the statute requires the verifying witness to "hear the child's remarks personally" and that, "according to the stipulation and [Celine's] impeachment, she likely did not." We disagree.

Our review of Celine's testimony at the reliability hearing establishes that she did not prompt any of the statements made by M.O. Rather, she was near the boys but out of their view when she overheard M.O. spontaneously and voluntarily say to the other boys that, "Michael stuck his finger up my butt" and that "he stuck his tongue in my mouth." When Celine sent the other boys away, M.O. confirmed that the statements he made were true. Further, the record does not reveal that M.O. had a motive to fabricate these statements, which were consistent with the statements he made to his mother and to Butts. Moreover, the stipulation during the reliability hearing established that Detective McCarthy's police report was not a verbatim account of his conversation with Celine, which could explain why his report did not include her statement that she heard M.O. say, "Michael stuck his finger up my butt." In this respect, the detective testified at trial that although his police report did not contain any other statements besides the one regarding defendant placing his tongue in M.O.'s mouth, the report was only a summary report and not verbatim. See *Cookson*, 215 Ill. 2d at 208-09 (noting that even after reviewing the admission of the victim's hearsay statements in light of all the evidence presented at trial, the court could not conclude that the trial court's reliability determination was an abuse of discretion). Finally, we fail to see the relevance, nor is an explanation offered by defendant, of

whether Celine knew which boy repeated M.O.'s statements and the record reveals that she testified that the "other boys" were repeating those statements. Ultimately, the trial court was aware of these alleged discrepancies and had the opportunity to observe Celine's testimony at the reliability hearing regarding the hearsay statements she overheard. Based upon our review of the record, we cannot say that the trial court's determination that these statements were reliable was an abuse of discretion.

Defendant also attacks the reliability of the hearsay statements recited by Butts because her interview with M.O. was not videotaped. We acknowledge, as defendant points out, that our supreme court has strongly admonished law enforcement personnel and social workers to record the type of interview conducted in this case "whenever possible." *Cookson*, 215 Ill. 2d at 211. However, in that same case, the court also stated that, "the lack of a contemporaneous video recording does not render the interview unreliable." *Cookson*, 215 Ill. 2d at 211. Based upon our review of the totality of the circumstances surrounding Butts' interview of M.O., we cannot say that the trial court abused its discretion in determining that the hearsay statements testified to by Butts were reliable.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and R. E. GORDON, J., concur.